**UNITED STATES**
v.
**AMERICAN STEVEDORES, Inc. et al.**

United States District Court,
S. D. New York.
June 17, 1954.

ing the corporation's net income as $140,-
123.38 and the tax thereon as $54,101.82
knowing the corporation's net income to
have been $171,992.88 and the tax there-
on to have been $67,487.01.

The second count charges the same de-
fendants with attempting to evade a
large part of the 1951 income tax of the
corporate defendant by filing a return
falsely stating the corporation's net in-
come as $21,227.32 and the tax thereon
as $6,102.86 knowing the corporation's
net income to have been $55,690.40 and
the tax thereon to have been $22,762.88.

The third count charges the defendant
Gus B. Chiarello with having attempted
to evade the 1950 income tax of his wife
and himself by having filed a joint re-
turn falsely stating their net income as
$20,931.94 and the tax thereon as $4,-
318.58 knowing their net income to have
been $31,052.80 and the tax thereon to
have been $8,000.40.

The fourth count charges the defend-
ant Gus B. Chiarello with having at-
tempted to evade the 1951 income tax of
his wife and himself by having filed a
joint return falsely stating their net in-
come as $17,844.21 and the tax thereon
as $4,007.48 knowing their net income
to have been $27,080.32 and the tax
thereon to have been $7,502.54.

The fifth count charges the defendant
James Chiarello with having attempted
to evade the 1950 income tax of his wife
and himself by having filed a joint return
falsely stating their net income as $17,-
142.88 and the tax thereon as $3,555.80
knowing their net income to have been
$27,263.73 and the tax thereon to have
been $6,728.76.

The sixth count charges the defendant
James Chiarello with having attempted
to evade the 1951 income tax of his wife
and himself by having filed a joint return
falsely stating their net income as $15,-
948.98 and the tax thereon as $3,436.70
knowing their net income to have been
$25,185.09 and the tax thereon to have
been $6,712.18.

J. Edward Lumbard, U. S. Atty., New
York City, Peter M. Brown, New York
City, of counsel, for United States.

Henry G. Singer, Brooklyn, N. Y., for
defendants.

SUGARMAN, District Judge.

An indictment heretofore filed herein
charges in its first count that the corpo-
rate defendant and all five individual de-
fendants attempted to evade a large part
of the 1950 income tax of the corporate
defendant by filing a return falsely stat-

The seventh count charges the defendant Joseph Chiarello with having attempted to evade the 1950 income tax of his wife and himself by having filed a joint return falsely stating their net income as $11,320.47 and the tax thereon as $1,714.58 knowing their net income to have been $20,081.81 and the tax thereon to have been $4,055.56.

The eighth count charges the defendant Joseph Chiarello with having attempted to evade the 1951 income tax of his wife and himself by having filed a joint return falsely stating their net income as $9,488.91 and the tax thereon as $1,507.92 knowing their net income to have been $17,484.34 and the tax thereon to have been $3,717.30.

The ninth count charges the defendant Richard C. Chiarello with having attempted to evade the 1950 income tax of his wife and himself by having filed a joint return falsely stating their net income as $15,217.36 and the tax thereon as $2,666.34 knowing their net income to have been $23,978.70 and the tax thereon to have been $5,318.70.

The tenth count charges the defendant Richard C. Chiarello with having attempted to evade the 1951 income tax of his wife and himself by having filed a joint return falsely stating their net income as $12,298.86 and the tax thereon as $2,386.70 knowing their net income to have been $20,294.29 and the tax thereon to have been $4,865.

Each count charges the acts and omissions therein recited to have been "[i]n violation of Section 145(b), Internal Revenue Code; 26 U.S.C., Section 145(b)".

All defendants have moved for a variety of relief as hereinafter severally treated.

### I.

The first branch of the motion seeks an order "[d]ismissing each count of the indictment upon the ground that each count fails to state facts sufficient to constitute an offense against the United States under Section 145(b), United States Code, Title 26".

■ Fed.Rules Crim.Proc. 7(c), 18 U.S.C., requires an indictment to be "a plain, concise and definite written statement of the essential facts constituting the offense charged". The offense charged is defined in 26 U.S.C. § 145(b) to be the willful attempt "in any manner to evade or defeat any tax imposed by this chapter or the payment thereof". Each count states an "attempt to evade and defeat a large part of the taxes due and owing" by the taxpayer for the given calendar year and the manner thereof, i. e. by defendants having filed returns each disclosing a specified net income and a specified tax reported thereon, whereas a specified higher net income and specified higher tax due thereon should have been stated. I deem this to be adequate compliance with the rule.

■ "An indictment is required to set forth the elements of the offense sought to be charged.

" 'The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Cochran v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, (435), 480, 40 L.Ed. 606.' Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861.

"The Federal Rules of Criminal Procedure 18 U.S.C.A., were designed to eliminate technicalities in criminal pleading and are to be con-

strued to secure simplicity in procedure. Rule 2, F.R.Crim.Proc. Rule 7(c) provides in pertinent part as follows:

"'The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain * * * any other matter not necessary to such statement. * * *' * * *".[1]

■ While "Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished" there can be no doubt that deliberate understatement of net income and tax due thereon in a return would be "conduct, the likely effect of which would be to mislead or conceal".[2] An indictment alleging the filing of such a false return adequately charges the elements of the offense of willful attempt at evasion.

The counts of this indictment follow substantially the wording of the statute and clearly inform the defendants of that of which they are accused, so as to enable them to prepare their defense and to plead the judgment in bar of any further prosecutions for the same offense.

Accordingly, the first branch of defendants' motion is denied.

## II.

■■ The second branch of the motion seeks an order "[d]ismissing. each count of the said indictment upon the ground that it fails to comply with the provisions of Rule 7 of the Federal Rules of Criminal Procedure in that the said indictment fails to state, for each count, the official or customary citation of statute, rule or regulation or other provision of law which the defendants are alleged

therein to have violated, and further, that the said failure to so state as aforesaid would mislead the defendants to their prejudice, or in the alternative, the defendants will request the Court to compel the United States Attorney to state, in writing, the official or customary citation of a statute, rule, regulation or other provision of law which the Government now claims, or will at the trial claim, the defendants violated.".

The rule relied on by defendants, Fed. Rules Crim.Proc. 7, itself defeats their right to relief. As hereinbefore stated each count stated the violation to be "of Section 145(b), Internal Revenue Code; 26 U.S.C., Section 145(b)". Such is ample compliance with subdivision (c) of the rule which requires that "The indictment * * * shall state for each count the official or customary citation of the statute * * * which the defendant is alleged therein to have violated".

I do not construe the rule to require the detailed recital in the indictment of each section of the Internal Revenue Code (dealing with gross income, allowable deductions and net income) employed in computing the net income and tax allegedly due. And even if it does, the omission thereof[3] does not mislead defendants to their prejudice because the indictment otherwise fully apprises them of the charge in each count.

Accordingly, the second branch of defendants' motion is denied.

## III.

■■ The third branch of the motion seeks an order "[d]ismissing Count One of the indictment as against the defendants, Diego Chiarello, Joseph A. Chiarello and Richard C. Chiarello, upon the ground that it affirmatively appears, as a matter of fact and law, that none of

---

1. United States v. Debrow, 346 U.S. 374, at page 376, 74 S.Ct. 113, at page 114.

2. Spies v. United States, 317 U.S. 492, at page 499, 63 S.Ct. 364, at page 368, 87 L. Ed. 418.

3. Fed.Rules Crim.Proc. 7(c) "Error in the citation or its omission shall not be ground for dismissal of the indictment * * * if the error or omission did not mislead the defendant to his prejudice."

these defendants signed or executed the income tax return referred to in Count One of the indictment.".

Obviously, the individuals who signed the 1950 corporate return cannot be ascertained from the face of the indictment. Assuming however that defendants Diego, Joseph and Richard Chiarello did not sign the 1950 corporate return, that, of itself cannot sustain their motion to dismiss count 1 of the indictment as to them. The crime charged is the attempt to evade or defeat the tax. As was pointed out above (marginal note 2), the broad language of the statute contemplates any number of acts or omissions which might amount to such an attempt. It cannot be said that merely because defendants Diego, Joseph and Richard Chiarello did not sign the 1950 corporate return, the indictment (which charges the defendants not only with filing but also with "causing to be filed" the allegedly false return) fails to state as to them an attempt to evade in some manner other than signing. The extent to which they might be entitled to particulars thereof (considered *infra*) is of no moment in testing the sufficiency of the indictment.

Accordingly, the third branch of the motion is denied.

## IV.

The fourth branch of the motion seeks an order "[d]ismissing Count Two of the indictment as against the defendants, Diego Chiarello, Gus B. Chiarello and Joseph A. Chiarello, upon the ground that it affirmatively appears, as a matter of fact and law, that none of these defendants signed or executed the income tax return referred to in Count Two of the indictment.".

For the reasons ascribed in III above this fourth branch of the motion is also denied.

## V.

The fifth branch of the motion seeks an order "[d]irecting that un-

der Rule 14 of the Federal Rules of Criminal Procedure, there should be a separate trial of all defendants under Counts One and Two; a separate trial for the defendant, Gus B. Chiarello, under Counts Three and Four; a separate trial of the defendant, James Chiarello, under Counts Five and Six; a separate trial of the defendant, Joseph A. Chiarello, under Counts Seven and Eight and a separate trial of the defendant Richard C. Chiarello, under Counts Nine and Ten.".

The effect of this request is that there be five trials of this indictment instead of one. Relief under Fed.Rules Crim. Proc. 14 rests in the sound discretion of the court. Embarrassment or prejudice to defendants in the joint trial of counts 1 and 2 (dealing with the corporate taxes) with counts 3 through 10 (dealing with the several personal taxes of four of the five individual defendants) must outweigh the obvious additional burden that five trials would impose on all involved as against one trial. In the light of defendants' right to requests to charge and the trial court's power to guide the trial and by proper instructions assure that the jury will not confuse the issues or the defendants, I am content that defendants have failed to sustain their burden of persuasively showing the likelihood of such embarrassment or prejudice to warrant the severance sought.

Accordingly, the fifth branch of the motion is denied.

## VI and VII.

Inasmuch as the return of the books, papers and documents sought by defendants in the sixth branch of their motion or, in the alternative, the right to copy same, sought in the seventh branch thereof, has been made academic by the surrender of said data by the United States Attorney to defendants, these branches of the motion are permitted to be withdrawn by defendants.

## VIII.

In this eighth branch of the motion (as amended by defendants' supplemental motion) defendants seek extensive particulars as to each of the ten counts in the indictment.

### A.

 As to counts 1 and 2 the motion is granted only to the extent that the government state, for each of the years 1950 and 1951, (1) the total sum which it claims constituted the corporate defendant's (a) gross income, (b) deductions, (c) exemptions, and (d) net income and the statute, rule or regulation governing each of same; (2) in what manner each individual defendant who did not sign a corporate return attempted to evade the corporate defendant's income tax and the statute, rule or regulation governing the same.

### B.

 As to counts 3 through 10 the motion is granted only to the extent that the government state as to each count for each of the years 1950 and 1951 the total sum which it claims constituted the respective defendant's (a) gross income, (b) deductions, (c) exemptions and (d) net income and the statute, rule or regulation governing the same.

## IX.

By supplemental motion addressed to the entire indictment the defendants seek an order "[s]uppressing all evidence obtained directly or indirectly from the books, papers and documents set forth in paragraph "7" of the original notice of motion".

The moving and answering papers disclose the following:—"The primary source of the Government's evidence of fraudulent tax evasion as alleged in the indictment herein, are [sic] the books and records of the defendant corporation itself * * * The instant tax fraud was discovered as a result of a tax investigation by the United States Attorney in this district, in cooperation with the Treasury Department.". A Special Grand Jury was convened on February 19, 1952 to conduct a "waterfront investigation * * * [of] violations of Federal statutes including the Internal Revenue Code, conspiracy, extortion, etc. This Grand Jury was in regular session from February, 1952 to March, 1953.". On August 18, 1952 a Grand Jury subpoena duces tecum, returnable August 22, 1952, was served on one of the individual defendants, as an officer of the corporate defendant, to appear and testify before the grand jury "in regard to an alleged violation of Title 18, Section 371, United States Code", and to produce the corporation's cash books, general ledgers, purchase journals, cancelled checks and vouchers for the years 1947–1951 inclusive. The subpoena was made returnable in the room of one of the Assistants to the United States Attorney.

On August 20, 1952, another of the individual defendants, also an officer of the corporate defendant, wrote that Assistant as follows:

"This will confirm telephone conversation of even date in response to a Subpoena Duces Tecum served on us this day to produce certain records wherein the writer notified you that most of these records, as far as we know, with the exception of the year 1950, are now in the hands of District Attorney Hogan's office and that the year 1950 is now being examined by Treasury Agents and those papers are now in their hands and in our Public Accountant's office. Further, that the writer would have Mr. Walter Gans of our office, contact you on Monday morning to see what arrangements can be made so that it would not be necessary for the writer to answer this subpoena at 10:30 of the 22nd day of August, 1952.".

Thereafter, at various times between October 14, 1952 and December 15, 1952

the records identified in the subpoena duces tecum and others were turned over by the defendants to the Assistant. None of the individual defendants ever testified before that Grand Jury.

Another "special waterfront grand jury", impanelled on June 9, 1953, indicted the defendants on March 31, 1954.

On the foregoing facts defendants seek suppression of all evidence directly or indirectly obtained from the corporate defendant's books and records urging that the Assistant so abused the court's process as to amount to "an illegal search and seizure in violation of the defendants' rights under the Fourth and Fifth Amendments to the Constitution of the United States".

The government resists by asserting that the surrender of the corporate books and papers to the Assistant was voluntary.

### A.

■ Upon the facts disclosed on this motion it becomes unnecessary, at least as to those counts of the indictment dealing with the year 1950, to now pass upon that issue.

By corporate defendant's own admission, through the letter supra of an officer thereof, who is one of the individual defendants herein, the 1950 corporate records, when subpoenaed were "being examined by Treasury Agents". The extent of the disclosure by said treasury agents to defendants of the purposes of that examination (usual civil investigation or one with a view toward criminal prosecution) not appearing, it must, on this record, be held that, as to the 1950 data, there was no "illegal search and seizure".[4]

The motion to suppress evidence gleaned from the corporate books as to the 1st, 3rd, 5th, 7th and 9th counts of the indictment which deal with the defendants' several 1950 returns is accordingly denied.

### B.

■ As to the 1951 records I cannot agree with the government's contention that their surrender by defendants was voluntary. Compliance with a Grand Jury subpoena duces tecum is compulsory.[5] The legal compulsion of the subpoena was not diminished by the belated compliance therewith in view of the reasons for the delay—possession in the main of the books and records by other governmental agencies, state and federal.

■ There is slight merit to the government's further contention that defendants slept on their rights in not earlier seeking the return of the records. It is true that the Grand Jury that subpoenaed them and apparently never used them, expired in March of 1953. I deem it unreasonable to expect a layman, whose records have been subpoenaed, to keep track of the life of the Grand Jury issuing the subpoena, and, upon its expiration, to be charged with the obligation of seeking their return, especially in the absence of advice to him by the District Attorney of the termination of the Grand Jury's labors. These defendants first learned of the expiration of the Grand Jury which subpoenaed their records upon their indictment on March 31, 1954 by another Grand Jury and they brought on this motion on April 15, 1954.

The remaining issue is therefore whether under the facts stated, evidence flowing from the 1951 corporate records should be suppressed as the product of a

---

4. United States v. Manno, D.C.N.D.Ill., 118 F.Supp. 511, 516.

5. United States v. Fleischman, 339 U.S. 349, 365, 70 S.Ct. 739, 94 L.Ed. 906; United States v. Monia, 317 U.S. 424, 429, 63 S.Ct. 409, 87 L.Ed. 376; Nelson v. United States, D.C.Cir., 208 F.2d 505, 510.

violation of defendants' rights under the Fourth and Fifth Amendments.

Considering first the individual defendants, assuming that the Assistant abused the court's process in obtaining possession of the corporate books by employing a Grand Jury subpoena duces tecum, they cannot be heard to complain thereof because their right to protection against illegal search and seizure under the Fourth Amendment and self-incrimination under the Fifth Amendment applies solely to their personal papers.[6]

As to the corporate defendant, it cannot plead the privilege against self-incrimination accorded by the Fifth Amendment.[7]

While the prohibition against unreasonable searches and seizures of its papers under the Fourth Amendment inures to a corporation,[8] it cannot be said, in the absence of proof that the Assistant procured the disputed documents under a Grand Jury subpoena duces tecum with the definite intention not to present them to a Grand Jury, that the court's process was abused under the facts here presented amounting to an unreasonable search and seizure. That such was not the intent is evidenced by the ultimate indictment of the defendants. I believe it of no moment that the indictment was found by a successor Grand Jury to that which issued the subpoena duces tecum.

Accordingly, the motion to suppress evidence gleaned from the corporate books as to the 2nd, 4th, 6th, 8th and 10th counts of the indictment, which deal with defendants' several 1951 returns, is denied.

Settle order.

6. Fuller v. United States, 2 Cir., 31 F.2d 747, certiorari denied 280 U.S. 556, 50 S.Ct. 17, 74 L.Ed. 612.

7. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L. Ed. 771; Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L. Ed. 917.

8. Fleming v. Montgomery Ward & Co., Inc., 7 Cir., 114 F.2d 384, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446.