**UNITED STATES of America**

v.

**The AMERICAN OIL COMPANY et al.,
Defendants.**

Crim. A. No. 153–65.

United States District Court
D. New Jersey.

Jan. 26, 1966.

David M. Satz, Jr., U. S. Atty., by Donald Horowitz, Asst. U. S. Atty., Bernard Wehrmann, Gerald R. Dicker, Bertram M. Kantor, Robert D. Canty, Antitrust Div., Dept. of Justice, for the Government.

McCarter & English, by Merritt Lane, Jr., Newark, N. J., for Atlantic Refining Co.; Howrey, Simon, Baker & Murchison, Harold F. Baker, Terrence C. Sheehy, Washington, D. C., Edward J. Kremer, Jr., of counsel.

Pitney, Hardin & Kipp, by Donald B. Kipp, Newark, N. J., for Sinclair Refining Co.; Wickes, Riddell, Bloomer, Jacobi & McGuire, by Harold F. McGuire, Donald K. McIntosh, Gen. Counsel, Frank R. Clampitt, J. Howard Marshall, Jr., New York City, of counsel.

Carey & Jardine, by Robert Carey, Jr., Newark, N. J., for Gulf Oil Corp.; Kissam & Halpin, by Leo T. Kissam, Anthony S. Genovese, Frederick L. Scofield, Arthur Vangeli, New York City, Jesse P. Luton, Jr., Houston, Tex., of counsel.

Stickel & Stickel, by Fred G. Stickel, Jr., Newark, N. J., for American Oil Co.; Kirkland, Ellis, Hodson, Chaffetz & Masters, by Hammond E. Chaffetz, Chicago, Ill., Ronald S. Daniels, New York City, Sam L. Erwin, Chicago, Ill., of counsel.

Milton, Keane & DeBona, by Joseph Keane, Jersey City, N. J., for Cities Service Oil Co. and Cities Service Co.; Paul Weiss, Rifkind, Wharton & Garrison, by Simon H. Rifkind, Jay H. Topkis, George H. Colin, New York City, of counsel.

Stryker, Tams & Dill, by William L. Dill, Jr., Newark, N. J., for Humble Oil & Refining Co.; Milbank, Tweed, Hadley & McCloy, by A. Donald MacKinnon, Henry F. Hartmann, New York City, Dillard W. Baker, Houston, Tex., of counsel.

Riker, Danzig, Scherer & Brown, by Dickinson R. DeBevoise, Newark, N. J., for Socony Mobil Oil Co., Inc.; Dewey, Ballantine, Bushby, Palmer & Wood, by John E. F. Wood, Edward N. Sherry, Charles F. Rice, New York City, of counsel.

WORTENDYKE, District Judge:

Defendants have brought three motions to dismiss the indictment in this case. Motion number 1 was dealt with in this Court's opinion filed December 30, 1965. 249 F.Supp. 130. This opinion relates to motions number 2 and 3.

### AS TO MOTION NUMBER 2

By what they designate as their motion No. 2 addressed to the indictment, defendants urge that count 1 thereof be dismissed "on the ground that it fails to state the essential facts constituting the offense charged therein with the definiteness, certainty and clarity required" by the Fifth and Sixth Amendments to the United States Constitution, and Rule 7(c) of the Federal Rules of Criminal Procedure.

In Count I the indictment sets forth the names of each of the defendants, the State of its incorporation and the place where it does business. It alleges that within the period of time covered by the charged conspiracy these defendants or their predecessors, other than Cities Service, were engaged in the business of selling gasoline.

Cities Service (Cities Service Company) is alleged to own and control Cities (Cities Service Oil Company), which succeeded to the business formerly carried on by Cities Service Oil Company which was merged into Arkansas (Arkansas Fuel Corporation), a corporation of the State of Delaware by an agreement of merger dated January 1, 1961. By this merger Arkansas became the surviving corporation and changed its name to Cities Service Oil Company, a corporation of the State of Delaware. From January 1, 1961 to December 31, 1962, Cities Service Oil Company (Delaware) carried on the business of Cities Service Oil Company (Pennsylvania), and by agreement of merger, dated December 31, 1962, Cities Service Oil Company (Delaware) was merged into Cities Service Petroleum Company, a corporation of the same State. Of this merger, Cities Service Petroleum became the surviving corporation, and changed its name to Cities Service Oil Company (Delaware).

The defendant Humble Oil and Refining Company (hereinafter Humble) is alleged to be the successor of Esso Standard Oil Company, a Delaware corporation, which was merged into Humble Oil & Refining Company (Delaware) by an agreement of merger dated December 15, 1959. Humble became the surviving corporation of that merger, and from the effective date thereof to the date of the indictment in this case, Humble carried on the business formerly carried on by Esso Standard Oil Company, a Delaware corporation.

Among other corporations participating with the named defendants, as co-conspirators in the offense charged in the first count of the indictment, are named California Oil Company, Sun Oil

Company, Texaco, Inc. and Tidewater Oil Company, but they were not made parties defendant in the indictment.

The first count contains definitions of terms used in the indictment, and sets forth that gasoline, as defined therein, and sold by the defendants in the described trading area,[1] was either produced in that trading area from crude oil continuously shipped in interstate commerce to refineries located therein, or was produced outside of the area and continuously shipped into the area in interstate commerce. The marketing in which the defendants engaged within the area described, during the period of time stated, involved the sale by defendants to distributors and dealers, by distributors to dealers, and by dealers to the public.

It is further alleged that in 1960 gasoline sold by all defendants in the trading area exceeded three billion six hundred million gallons, with a total dollar value exceeding $720,000,000.00 and that this gallonage accounted for approximately 67% of all gasoline sold in the trading area. That sold by Atlantic, Cities and Gulf (Gulf Oil Corporation) exceeded 1,500,000,000 gallons, with a retail dollar value exceeding $300,000,000.00, and accounted for approximately 28% of all gasoline sold in the trading area. Most of the gasoline sales in the area during the period covered by the indictment was resold by dealers under the brand names, trade marks or trade names of the defendant. During the same year (1960) dealers in the area sold approximately 340,000,000 gallons of gasoline as private brand gasoline, having a retail dollar value of approximately $60,000,000.00 and accounting for approximately 6.4% of all gasoline sold in the area. In the same year, Cities, through its distributors, supplied 90,000,000 gallons or 26% of the private brand gasoline sold by dealers in the area. The retail prices of private brand gasoline during the period covered by the indictment were consistently below retail prices of gasoline sold under the brand names, trade marks or trade names of the defendants.

■ Against the foregoing historical and statistical background averments the indictment proceeds, commencing with paragraph 13 thereof, to charge the offense alleged against the defendants, i. e., that from 1955 continuously up to and including the return of the indictment, the named defendants and their coconspirators "have been engaged in a combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce in gasoline, in violation of Section 1 of the Act of Congress of July 2, 1890, as amended, (15 U.S.C. Section 1) commonly known as the Sherman Act." Thus the first count specifically charges that the defendant corporations, over a specific period of time, engaged in a combination and conspiracy which unreasonably restrained interstate trade and commerce in gasoline in the sale and distribution of which the defendants were engaged, and that such conspiracy was in violation of Section 1 of the Sherman Act. The section itself provides that every combination or conspiracy in restraint of trade or commerce among the several States is illegal. The substance of the foregoing allegations is what the statute declares to be illegal *per se*; United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 223, 60 S.Ct. 811, 84 L.Ed. 1129, but the indictment does not confine the charge of the offense to the language of the statute invoked. Paragraph 14, which immediately follows, explicitly states that the combination and conspiracy, which the statute declares to be illegal, consisted of a continuing agreement, understanding and concert of action among the defendants and coconspirators "to raise, fix, stabilize and maintain tank wagon prices and retail prices of gasoline in the trading area." Next follows a statement of what the defendants and coconspirators did in the pursuit of the object of the conspiracy. These acts are categorized as (1) raising, fixing, stabilizing and maintaining tank wagon prices and

---

1. The trading area encompasses the States of New Jersey, Pennsylvania and Delaware.

retail prices of gasoline in the trading area, and (2) substantially restricting the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area. After that particularization appears a statement of the effects of the conspiracy, and of the acts done in furtherance thereof. These effects are enumerated as follows: "(a) tank wagon prices of gasoline in the trading area have been raised, fixed, stabilized and maintained; (b) retail prices of gasoline in the trading area have been raised, fixed, stabilized and maintained; (c) price competition between dealers in the trading area has been suppressed; (d) competition from distributors and dealers engaged in the sale of private brand gasoline in the trading area has been restrained and suppressed; (e) distributors, dealers and the public in the trading area have been denied the opportunity of purchasing gasoline in a free and competitive market."

The first count concludes with the statement that the charged offense was carried out in part within the District of New Jersey and within five years preceding the return of the indictment.

The form and content of a Federal criminal indictment is prescribed by F.R. Cr.P. 7(c) in the following language:

> "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. * * * "

Among the numerous cases which movants cite in support of their contention that count I of the indictment in this case should be dismissed, I find three cases which compel my conclusion that the indictment should be sustained:

United States v. Maine Lobstermen's Association, D.C.Me.1957, 160 F.Supp. 115, sustained a single-count antitrust indictment strikingly similar in its allegations to those here under scrutiny. That indictment, after charging the defendant in the language of the statute and stating the period of time throughout which the conspiracy to fix, stabilize and maintain live lobster prices extended, specified that the conspiracy consisted of a continuing agreement and concert of action among the defendants and coconspirators, the substantial terms of which provided that the conspirators (1) would fix and establish a minimum selling price for live Maine lobsters sold to dealers, (2) would refrain from catching lobsters until the minimum price was obtained and (3) would induce and compel all lobstermen to adhere to the terms of the conspiracy. In addition to United States v. Minneapolis Electrical Contractors Association, D.C.Minn., 1951, 99 F.Supp. 75, app. dism. 8 Cir. 1953, 207 F.2d 782, the Court in Maine Lobstermen cited numerous other cases holding that an indictment is sufficient if, when construed as a whole, it informs the accused of the nature of the charges against him so that the defendant can prepare a defense and plead double jeopardy in a second prosecution for the same offense. See United States v. Northeast Texas Chapter, etc., 5 Cir. 1950, 181 F.2d 30; Wilson v. United States, 5 Cir. 1947, 158 F. 2d 659, cert. den. 1947, 330 U.S. 850, 67 S.Ct. 1095, 91 L.Ed. 1294; United States v. Armour & Co., 10 Cir. 1943, 137 F.2d 269; Las Vegas Merchant Plumbers Association v. United States, 9 Cir. 1954, 210 F.2d 732, cert. den. 1954, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645; American Tobacco Co. v. United States, 6 Cir. 1944, 147 F.2d 93, aff'd 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575. This Court is satisfied that the instant indictment con-

tains all the allegations necessary to charge a violation of Section 1 of the Sherman Act and meets the requirements of Rule 7(c) and the additional requirements established by judicial decision for Sherman Act cases.

In United States v. American Stevedores, Inc., et al., D.C.N.Y.1954, 16 F.R.D. 164, the Court sustained an indictment charging fraudulent income tax evasion, and in holding that the indictment complied with the requirements of F.R.Cr.P. 7(c), culled from the opinion in United States v. Debrow, 1953, 346 U.S. 374 at 376, 74 S.Ct. 113 at 114, 98 L.Ed. 92, the following language: " 'The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." ' "

United States v. Greater Kansas City Retail Coal Merchants Association, D.C. Mo.1949, 85 F.Supp. 503, also cited by movants, involved a challenge to the sufficiency of an indictment by way of motion to dismiss, upon the ground that there was a failure to allege sufficient particulars to bring the indictment within the criteria prescribed for a charge of violation of Section 1 of the Sherman Act. In sustaining the indictment, Judge Ridge, after reviewing the criticisms made of the indictment, had this to say at p. 508:

> "Such challenge cannot be sustained when considered either separately or collectively. All such factors are more properly addressed to the indictment by way of a motion for a bill of particulars and not through motion to dismiss for failure of the indictment to allege facts sufficient to charge an offense. * * [Citing Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86

L.Ed. 680]. The constituent elements of time, place, manner, means and effect through which the government here charges defendants with violation of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, are generally alleged in the instant indictment so as to establish a violation of that act. 'The particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of a conspiracy for which (defendants) contend is not essential to an indictment' returned under the Sherman Act. Glasser v. United States, supra. Such an indictment is legally sufficient if it generally charges all the essential elements of the offense with sufficient clarity to advise the defendants of the accusation made against them, to enable them to prepare their defense, and to enable them to plead a judgment of conviction or acquittal thereon in bar to a subsequent prosecution for the same offense, Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; even though the generality of the charges made may be subject to being particularized. * * * "

At eight points in their main brief and again twice in their reply brief in support of their motion number 2, the defendants have cited Russell v. United States, 1962, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240. I distinguish that case because the statute there under consideration, 2 U.S.C. § 192, describes the offense which it creates as refusal by a witness summoned by the authority of either House of Congress, to "answer any question pertinent to the question under inquiry." It is perfectly obvious that unless the indictment under that statute discloses the particular question under congressional inquiry, there would be no violation of the statute if the question which the witness refused to answer was not pertinent to the subject under investigation by the congressional body. The statutory offense consists of the refusal to answer a question pertinent to

a matter under investigation. The violations of the Sherman Act charged in the indictment at bar are *per se* illegal. The refusal to answer a question in a congressional investigation would only be illegal if it appeared that the question was relevant to a matter then under inquiry by that body.

Movants' reply brief criticizes certain cases relied upon by the Government in opposition to the motion, one of which, Greater Kansas City Retail Coal Merchants, has been discussed supra. United States v. United States Steel Corp., D.C.N.Y.1964, 233 F.Supp. 148, found sufficient an indictment charging a conspiracy to eliminate price competition in the sale of carbon sheets which informed the defendants as to time, place, manner, means and effect of the alleged violation of 15 U.S.C. § 1. The indictment considered was held to sufficiently apprise the defendants of the charge against them to enable them to adequately prepare for trial and defense, and to plead any judgment in bar of future prosecution on the same charge. A comparison of the foregoing analysis of the indictment at bar with the summary of the indictment in the United States Steel case, supra, discloses a striking and complete similarity between the allegations of each. United States v. Johns-Manville Corp., D.C.Pa.1962, 213 F.Supp. 65, held valid an indictment charging violations of Sections 1 and 2 of Title 15, in averments alleging combination and conspiracy in unreasonable restraint of trade and to monopolize commerce in asbestos-cement pipe and couplings. The Court pointed out that the conspiracy charged under the Sherman Act did not require the pleading or proof of overt acts and that the field of trade and commerce, i. e., asbestos-cement pipe and couplings, in which the conspiracy operated was specified with sufficient definiteness in the indictment. In United States v. A. P. Woodson Co., D.C.D.C.1961, 198 F. Supp. 579, a Section 3 Sherman Act indictment was held sufficient with respect to its allegations of time, territory, conspiracy and its effect. In my opinion it

is appropriately relied upon by the Government in support of the indictment at bar and is not, as contended by movants, distinguishable.

Count 1 of the indictment presently before me informs the defendants as to the time (1955 to the present), place (the States of New Jersey, Pennsylvania and Delaware), manner (combination and conspiracy in unreasonable restraint of interstate trade in gasoline), means (a continuing agreement to raise, fix, stabilize and maintain tank wagon and retail prices of gasoline in the trading area) and effects (raising and fixing tank wagon and retail prices of gasoline, suppression of price competition between dealers, restraint and suppression of competition from distributors and dealers in the sale of private brand gasoline, and denial to distributors, dealers and the public the opportunity of purchasing gasoline in a free and competitive market.)

I conclude that the first count of the indictment in the case at bar fully complies with the requirements outlined in the opinions quoted from. Accordingly, defendants' motion number 2 will be denied.

## AS TO MOTION NUMBER 3

This motion is brought by Atlantic, Cities, Cities Service and Gulf to dismiss Counts II and III of the indictment. These defendants are alleged to have conspired to monopolize (Count II) and to have attempted to monopolize (Count III) interstate trade in gasoline within the defined trading area in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. These movants urge, as ground for their motion, that neither of these counts alleges an offense because it does not allege the essential elements of the crime purported to be charged, and does not allege what, in fact, defendants did or agreed to do with the definiteness, certainty and clarity required by the Fifth and Sixth Amendments and Rule 7(c) of the Federal Rules of Criminal Procedure. Movants also incorporate by reference the legal principles set forth in

their briefs on the motion addressed to Count I.

Section 2 of the Sherman Act, upon which Counts II and III of the indictment are based, proscribes monopolization, attempts to monopolize and conspiracies to monopolize any part of interstate commerce, and prescribes penalties for violation of the section.[2]

The combination and conspiracy to monopolize charged against these moving defendants as violative of § 2 of the Act is described in Count II of the indictment as consisting of a continuing agreement, understanding and concert of action among those defendants and coconspirators with them to raise, fix, stabilize and maintain tank wagon prices and retail prices of gasoline, and to substantially restrict the supply of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area. These defendants are charged with having done, in the defined trading area, the very things which they conspired to do, namely, fixed tank wagon and retail prices and restricted the supply of gasoline available to distributors and dealers. The effects of the conspiracy are those alleged in paragraph 16, incorporated by reference in the Second Count, namely, tank wagon and retail prices of gasoline have been raised, fixed, stabilized and maintained; price competition between dealers has been suppressed; competition from distributors and dealers in private brand gasoline has been restrained and suppressed, and the opportunity of purchasing gasoline in a free and competitive market has been denied to distributors, dealers and the public. Cf. United States v. United States Steel Corporation, S.D.N.Y.1964, 233 F.Supp. 148.

■ The defendants attack the second and third counts for failure to allege

the existence of a specific intent to accomplish monopolization. They cite, *inter alia*, Swift & Co. v. United States, 1905, 196 U.S. 375, 25 S.Ct. 276, 49 L. Ed. 518 and United States v. International Boxing Club of New York, D.C. N.Y.1957, 150 F.Supp. 397, affd. 1959, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270. In Times-Picayune Pub. Co. v. United States, 1953, 345 U.S. 594 at 626, 73 S.Ct. 872 at 890, 97 L.Ed. 1277, the Court states: "While the completed offense of monopolization under § 2 demands only a general intent to do the act, 'for no monopolist monopolizes unconscious of what he is doing', a specific intent to destroy competition or build monopoly is essential to guilt for the mere attempt * * * charged." The accused defendants insist that an essential element of a § 2 violation is that they engage in stated activities with the specific intent, not merely to accomplish the acts performed, but also, the specific intent to obtain and to exercise monopoly power in the relevant trade area. They say that no allegation is made to that effect. They argue therefore that the criteria for a charge of unlawful monopolization are not satisfied by the mere allegation that defendants conspired to raise, fix, maintain or stabilize prices or to restrict private brand gasoline supply. It is essential that an indictment must allege all of the material facts and circumstances embraced in the statutory definition of the offense, and if any essential element of the crime is omitted such omission may not be supplied by intendment or implication. The charge *must be made directly and not inferentially or by way of recital.* Pettibone v. United States, 1893, 148 U.S. 197, 13 S. Ct. 542, 37 L.Ed. 419. Applied to the present indictment, the rule requires that it state the act or acts upon which the required intent to offend the statute

2. § 2. Monopolizing trade a misdemeanor; penalty:
"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several

States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

may be found. See Standard Oil Co. of New Jersey v. United States, 1911, 221 U.S. 1, 75, 31 S.Ct. 502, 55 L.Ed. 619; Montrose Lumber Co. v. United States, 10 Cir. 1941, 124 F.2d 573. In *Montrose*, as in the case at bar, allegations of one count, which charged a section 1 violation, were incorporated by reference in another count, which charged a conspiracy to monopolize. It was held that the means, methods and acts which were set forth in the Section 1 Count constituted a particularization sufficient to support the spelling out of intent to violate Section 2. The indictment in Montrose charged that the various defendants "undertook to control and dominate sales in the market area [so] as to restrict them to recognized retail lumber dealers, and to preclude non-recognized retail lumber dealers from buying such products in a free market." In United States v. Chas. Pfizer & Co., S.D.N.Y.1963, 217 F.Supp. 199, the Court held, on motion attacking the indictment, that one of the counts of the indictment which charged the substantive crime of monopolization contained sufficient allegations to disclose an intent on the part of the defendant because of the incorporation in the monopolization count of things done by the conspirators in the other counts as steps toward the monopolization charged. The acts enumerated and so realleged in *Pfizer* were construed to disclose a deliberate course of conduct from which an intent to monopolize was the only possible reasonable inference. As the *Pfizer* opinion states, at page 203: "[T]he acts relied on as evidence of monopolization are the very acts relied on as evidencing the conspiracy. If they are sufficient overt acts to sustain a charge of conspiracy and that it was afoot, they must of necessity be sufficient to charge acting in concert or joint action for the monopoly charge. Whether the Government will be able to establish that defendants were participants in a plan to achieve or maintain a monopoly is a matter for the trial and not for consideration at this time."

■■ Subsection (c) of Rule 7 of the Federal Rules of Criminal Procedure requires that an indictment should be a plain, concise and definite written statement of essential facts constituting the offense charged. The object of the rule was to achieve a simplification and avoidance of unnecessary phraseology of an indictment, while preserving the defendants' constitutional rights under the Fifth and Sixth Amendments to the Federal Constitution. In appraising the sufficiency of an indictment in the light of the provisions of the Rule and the Constitutional requirements, the entire indictment must be examined and considered. The rule itself provides that "[a]llegations made in one count may be incorporated by reference in another count" and "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." We have already summarized the indictment for the purpose of appraising the sufficiency of Count I thereof. Counts II and III expressly incorporate by reference certain critical allegations of Count I. Among the allegations so incorporated by reference are the following. Gasoline is defined generally as a product refined from crude oil and suitable for use as a fuel in propelling automobiles. Private brand gasoline means gasoline sold by a dealer without the use of a brand name, trademark or trade name owned or controlled by any defendant or other company engaged in or affiliated with a company engaged in the business of producing gasoline. Counts II and III are, by their terms, limited to accusations against four of the named defendants viz. Atlantic, Cities, Cities Service and Gulf. Those corporations are described in paragraphs 1 and 2 of the indictment, also incorporated by reference in Counts II and III, and they, together with the allegations contained in paragraphs 5 through 12, are similarly incorporated by reference. Atlantic, Cities and Gulf were engaged, during the indictment period and within the relevant market, in the selling of

gasoline. All defendants, including those charged in Counts II and III, sold in the year 1960, in excess of 3,600,000,000 gallons of gasoline, representing a retail total value in excess of $720,000,000., and accounting for approximately 67% of all gasoline sold in the trading area. Of this total the gallonage sold by Atlantic, Cities and Gulf exceeded 1,500,000,000 gallons which represented a retail dollar value in excess of $300,000,000 and approximately 28% of all gasoline sold in the trading area. In 1960 dealers in the trading area sold 340,000,000 gallons of private brand gasoline, representing a retail dollar value of $60,000,000. These sales accounted for approximately 6.4% of all gasoline sold in the area. Of the 340,000,000 gallons of private brand gasoline sold in the trading area in 1960, Cities, through its distributors, supplied 90,000,000 gallons, representing 26% of the private brand gasoline sold by dealers in the area. During the indictment period the retail prices of private brand gasoline were consistently below the retail prices of gasoline sold under the brand names, trademarks or trade names of the defendants.

The foregoing allegations disclose the market positions of the defendants charged in the Second and Third Counts, and their capacity to monopolize the business in the part of interstate commerce in gasoline in the marketing area. The indictment charges that, as early as 1955, and continuously up to and including the date upon which the indictment was returned, Atlantic, Cities, Cities Service and Gulf have been engaged in a conspiracy to monopolize interstate trade in gasoline within the market area in violation of Section 2 of the Sherman Act. In Count III also, against the same background allegations, the indictment charges that, beginning at least as early as 1955, up to and including the return date of the indictment, Atlantic, Cities, Cities Service and Gulf, in the position and with the power in the relevant market disclosed, have engaged in an attempt to monopolize interstate trading in gasoline in violation of Section 2 of the Sher-

man Act. Paragraph 28 of Count III states that in furtherance of the attempt of those defendants to monopolize, and for the purpose of raising, fixing, stabilizing and maintaining tank wagon prices and retail prices of gasoline in the trading area, those defendants did certain things which are set forth in detail in paragraphs 22 and 23 of the indictment and are incorporated by reference in paragraph 28. Thus the Government charges that the defendants conspired to raise, fix, stabilize and maintain tank wagon and retail prices of gasoline in the area, and to restrict the amount of gasoline available to distributors and dealers engaged in the sale of gasoline therein. The effects of what these defendants are charged with having done are detailed in paragraph 16 of the indictment which is also incorporated by reference in the Second and Third Counts thereof. Those effects are charged to have been as follows: tank wagon prices of gasoline in the area have been raised, fixed, stabilized and maintained; retail prices of gasoline in the area have been raised, fixed, stabilized and maintained; price competition between dealers in the trading area has been suppressed; competition from distributors and dealers engaged in the sale of private brand gasoline has been restrained and suppressed; and distributors, dealers and the public in the trading area have been denied the opportunity of purchasing gasoline in a free and competitive market.

■ The answer to defendants' contention that the indictment lacks allegations charging the defendants with intent to monopolize or to attempt to monopolize is to be found in paragraph 28 read in conjunction with paragraphs 22 and 23. These paragraphs charge a continuing agreement, understanding and concert of action to fix, stabilize and maintain tank wagon prices and retail prices of gasoline in the trading area, and to substantially restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the area. In further-

ance of such concert of action, the defendants are charged with having actually raised, fixed, stabilized and maintained such prices, and have substantially restricted the amount of gasoline available to such distributors and dealers. Intent to achieve the monopolization, and the consequences thereof proscribed by the statute is glaringly apparent from the language employed in the accusations made. Equally apparent from the allegations of the two counts demurred to is the charge that the accused conspirators possessed, or could achieve upon the effectuation of the objects of the conspiracy, within the defined trading area, the monopoly power recognized as an essential element of the offenses alleged. The totality of the allegations of the indictment clearly discloses a combination of power with a purpose or intent to monopolize. These elements are the essentials of the offenses charged in the Second and Third Counts of the indictment under consideration. Monopoly power is the power to control prices or to unreasonably restrict or exclude competition, and the intent to exercise the power. United States v. E. I. Du Pont De Nemours & Co., 1956, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264; American Tobacco Co. v. United States, 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575. "It is * * * not always necessary to find a specific intent to restrain trade or to build a monopoly in order to find that the anti-trust laws have been violated. It is sufficient that a restraint of trade or monopoly results as the consequence of a defendant's conduct or business arrangements. * * * Specific intent in the sense in which the common law used the term is necessary only where the acts fall short of the results condemned by the Act." United States v. Griffith, 1948, 334 U.S. 100, 105, 68 S.Ct. 941, 944, 92 L.Ed. 1236.

I find and conclude that, when fairly construed, the allegations contained and incorporated by reference in Counts II and III of the indictment in this case fully comply with the criteria prescribed by the provisions of Rule 7(c) of the Federal Rules of Criminal Procedure. Therefore, the motions to dismiss Counts II and III of that indictment are denied. The Government is requested to present a draft of appropriate order.