**UNITED STATES of America,**
v.
**The AMERICAN OIL COMPANY et al.,**
**Defendants.**
Crim. No. 153–65.

United States District Court
D. New Jersey.
Dec. 30, 1965.

David M. Satz, Jr., U. S. Atty., by Donald Horowitz, Asst. U. S. Atty., Bernard Wehrmann, Dept. of Justice, for the Government.

McCarter & English, by Merritt Lane, Jr., Newark, N. J., for Atlantic Refining Co.; Howrey, Simon, Baker & Murchison, by Harold F. Baker, Terrence C. Sheehy, Washington, D. C., Edward J. Kremer, Jr., Philadelphia, Pa., of counsel.

Pitney, Hardin & Kipp, by Donald B. Kipp, Newark, N. J., for Sinclair Refining Co.; Wickes, Riddell, Bloomer, Jacobi & McGuire, by Harold F. McGuire, D. K. McIntosh, Frank R. Clampitt, J. Howard Marshall, Jr., New York City, of counsel.

Carey & Jardine, by Robert Carey, Jr., Newark, N. J., for Gulf Oil Corp.; Kissam & Halpin, by Leo T. Kissam, Anthony S. Genovese, Frederick L. Scofield, Arthur Vangeli, New York City, Jesse P. Luton, Jr., Pittsburgh, Pa., of counsel.

Stickel & Stickel, by Fred G. Stickel, Jr., Newark, N. J., for American Oil Co.; Kirkland, Ellis, Hodson, Chaffetz & Masters, by Hammond E. Chaffetz, Chicago, Ill., Ronald S. Daniels, New York City, Sam L. Erwin, Chicago, Ill., of counsel.

Milton, Keane & DeBona, by Joseph Keane, Jersey City, N. J., for Cities Service Oil Co. and Cities Service Co.; Paul, Weiss, Rifkind, Wharton & Garrison, by Simon H. Rifkind, Jay H. Topkis, George H. Colin, New York City, of counsel.

Stryker, Tams & Dill, by William L. Dill, Jr., Newark, N. J., for Humble Oil & Refining Co.; Milbank, Tweed, Hadley & McCloy, by A. Donald MacKinnon, Henry F. Hartmann, New York City, Dillard W. Baker, Houston, Tex., of counsel.

Riker, Danzig, Scherer & Brown, by Dickinson R. Debevoise, Newark, N. J., for Socony Mobil Oil Co. Inc.; Dewey, Ballantine, Bushby, Palmer & Wood, by John E. F. Wood, Edward N. Sherry, Charles F. Rice, New York City, of counsel.

WORTENDYKE, District Judge:

Defendants have brought three motions to dismiss the indictment in this case. This opinion relates to motion number 1.

On April 8, 1965 the Grand Jury in and for the District of New Jersey returned its indictment charging the defendant corporations, sellers of gasoline within a trading area covered by the States of New Jersey, Pennsylvania and Delaware, with having conspired, during the period stated in the indictment, to unreasonably restrain interstate trade and commerce in gasoline in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to monopolize such trade and commerce in violation of Section 2 of the Act, 15 U.S.C. § 2, by raising, fixing, stabilizing and maintaining tank wagon and retail prices of gasoline, and restricting the amount of gasoline available to distributors of private brands of gasoline in that area. The defendants The Atlantic Refining Company, Cities Service Oil Company, Cities Service Company, and Gulf Oil Corporation are further charged with attempting to monopolize, in violation of Section 2 of the Act.

All of the defendants have moved the Court for a dismissal of the indictment upon the ground that the grand jury which returned the indictment was improperly constituted and impanelled by reason of the systematic and deliberate exclusion therefrom of women. There is no disagreement between the defendants and the Government respecting the procedure followed by the appropriate officials in selecting and impanelling persons for service upon the grand jury.[1]

---

1. As summarized in the movants' brief, the procedure employed was as follows:

"1. The Clerk's office maintains, in a general listing, the names of approximately 10,000 persons collected from the voter registration lists and organization membership lists of eight counties, including and surrounding that in which this Court sits, viz., Essex, Bergen, Morris, Middlesex, Union, Passaic, Hudson and Sussex (hereafter referred to as the vicinage). The names in the general listing are recorded on file cards and maintained in file drawers by respective counties of residence. Additionally, the file cards are segregated within each county drawer according to the sex of the person whose name is recorded on the card.

"2. When directed by the Court to draw the panel of jurors which returned this indictment, the jury officials proceeded as follows:

"(a) A Deputy Clerk and the Jury Commissioner drew from the male-female segregated file, by county, a predetermined number of male and female names (in the ratio of approximately two men to each woman), the names being drawn alternately, one by one, until 350 names had been selected.

"(b) The cards containing the names of the persons thus selected were then placed, by respective county, on a tabletop, shuffled together, and deposited by groups into the jury wheel.

"(c) From the jury wheel, 100 names were then drawn alternately by the Jury Commissioner and a Deputy Clerk. As drawn, a typewritten list was prepared, showing the names in the order drawn and numbered consecutively. The 100

The movants contend that that procedure resulted in the systematic and deliberate exclusion of more than 50% of the potential female jurors in the vicinage from which the grand jurors were drawn, so that jurors were selected from only a portion of those persons available for service rather than from all persons eligible.

The Clerk of this Court has explained that the same general pattern is disclosed in the selection of grand and petit jurors, and that the panels drawn are initially weighted in favor of men. The object of this practice is stated to be not to exclude or to limit women from participating on juries, but to achieve a better balance of men and women on juries in the light of the experience, over a period of at least 24 years, that more men than women request to be and are, for valid reasons, excused from jury service.

Movants rely principally upon Ballard v. United States, 1946, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181, for support of their contention that the method of selecting the panel from which the grand jurors who returned the indictment in this case were drawn invalidates the indictment. At the outset it should be noted that Ballard was decided *December 9, 1946*. At that time, 28 U.S.C. § 411 (1940 ed., since supplemented by § 1861 of the 1948 revision of that Title), provided that "jurors in a federal court shall have the same qualifications as those of the highest court of law in the State" in which the federal court sits. Ballard, supra, 190, 67 S.Ct. 263. The trial court in Ballard sat in California, where women were eligible for jury service under State law. 28 U.S.C. § 1861 provides that any citizen of the United States who has attained the age of 21 years,

and resides within the judicial district, is competent to serve as a grand juror, subject to certain conditions not here relevant. This section was adopted *June 25, 1948*, as Chapter 646, 62 Stat. 951. Section 1863 of the same Title, and part of the same Chapter, authorizes the exclusion from the jury panel of "[a]ny class or group of persons * * *, for the public interest, * * * based on a finding that such jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice." The Supreme Court directed the dismissal of the indictment because, as stated in the majority opinion, 329 U.S. at p. 194, 67 S.Ct. at p. 264, "[A] flavor, a distinct quality is lost if either sex is *excluded*" from a grand or petit jury, and "the *exclusion* of women from jury panels may at times be highly prejudicial to the defendants." (p. 195, 67 S.Ct. p. 265). (Emphasis supplied.)

The case at bar did not involve the systematic exclusion of women from the panel from which the grand jury was selected. There was, however, an intentionally prearranged systematic disproportion between the number of women and the number of men whose names were placed in the wheel from which the drawing by lot was made. The method and purpose of creating this disproportion is clearly stated in the letter of the Court Clerk disclosing the procedure employed, which states in part:

"We first seek to obtain a representative number from each county serving the Newark area. From the 1950 census we obtained the population of each county. We seek to have in the wheel from which the drawing is made the same ratio by

persons whose names were thus drawn were then summoned to appear for jury duty. After striking the names of those excused, deceased, unable to be located, or otherwise unavailable, the first 23 persons whose names remained on the list were impaneled as the grand jury." As summarized in the Government's brief on the motion:

"The Jury Commissioner and the Deputy Clerk alternately pick names from the master file in the ratio of approximately two men to each woman and place them in the jury wheel from which the Grand Jury will be drawn until 350 names are selected. Accordingly, the Grand Jury which returned this indictment was drawn from a panel composed of 246 men and 104 women."

county as the ratio of each county to the total population of those counties. After deciding on the number of wheel cards to be taken from the pool for each county and placed in the wheel for drawing, we determine that ⅔rds of the cards should be those of men and ⅓ those of women. This is not discrimination, but there is a valid reason therefor. Experience indicates that more men request and are excused from jury service than women. Therefore, by this method we should obtain a better balance. * * * Even though the cards were 2–1 on the male side, when the 6,314 cards were placed in the drum, lady luck determined the division of the 2,000 removed. * * A check of the names [upon an exhibit submitted by the Clerk] shows 1,031 men and 969 women, or 48.4% women on the list from which jurors will be summoned for service. So, though only 33% of women went into the drum, by luck of the draw, 48.4% came out."

18 U.S.C. § 3321 provides, in pertinent part:

"Every grand jury impaneled before any district court shall consist of not less than sixteen nor more than twenty-three persons. * *"

28 U.S.C. § 1864 provides, in pertinent part:

"The names of grand and petit jurors shall be publicly drawn from a box containing the names of not less than three hundred qualified persons at the time of each drawing.

"The jury box shall from time to time be refilled by the clerk of court, or his deputy, and a jury commissioner, appointed by the court.

\* \* \* \* \* \*

"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box *without reference to party affiliations,* until the box shall contain at least 300 names or such larger number as

the court determines. * * *."
(Emphasis supplied.)

■■■ Officials charged with the responsibility of selecting names of persons for service on grand and petit juries may exercise some discretion to the end that competent persons be selected, but procedures must be employed in such selection whereby juries will be truly representative of a cross-section of the community. It is not, however, essential that every grand jury or petit jury include representatives of *all* racial, economic, or social groups of the community; nor is an exact proportional representation of ethnic, economic or social groups a prerequisite to the validity of an indictment or verdict. An indictment becomes vulnerable only if representatives of such groups were systematically and arbitrarily *excluded* from the list of persons from which the jury was chosen. Bary v. United States, 10 Cir. 1957, 248 F.2d 201, 206, citing Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866.

■■■ The conceded facts presented upon the pending motion fail to support the movants in their endeavor to discharge the burden of showing that, from the grand jury which returned the indictment against them, there was excluded *an appropriate class* forming a portion of a fair cross-section of the community, Padgett v. Buxton-Smith Mercantile Company et al., 10 Cir. 1960, 283 F.2d 597, 599; Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187. Those facts disclose that the panel was composed, albeit in differing proportions, of both sexes. Indeed, even if the proportions of the names placed in the box were reversed, the lot of drawing from the wheel could not have guaranteed any specific proportion of either sex upon the jury selected. An example il-

lustrating the truth of this statement is cited in the Clerk's letter, where the deposit of 33% of women in the drum resulted in a drawing of 48.4% of women on the list. In the language of Padgett, supra, 283 F.2d at p. 599: "The rule requiring a jury to be truly representative of a cross-section of the community and forbidding the systematic or arbitrary exclusion of members of any ethnic, racial, or religious, social or economic group does not mean that a banker is entitled to a jury on which another banker sits or that a day laborer have a jury on which a member of his group sits."

Having in mind that the offenses charged in the indictment before us are violations of Sections 1 and 2 of the Sherman Act, and that all of the defendants are bodies corporate, there is disclosed neither the actuality nor the possibility that any or all of the defendants will or could suffer prejudice by reason of the proportion of men to women in the persons summoned to serve upon the grand jury which returned the indictment. Whether the proportion of men to women among those actually sworn as grand jurors was greater or less than the proportion among those summoned, and what the actual proportion of those sworn was, is not disclosed upon this motion. Suffice it to say that the complete exclusion of women from the persons summoned to serve upon the grand jury did not exist here as it did in Ballard, supra. Moreover, the indictment in Ballard charged the defendants, who were three men and three women, with using the mails to defraud. In that case, therefore, which involved both men and women as individual defendants, there might have been a basis for inferring that the exclusion of women from the grand jury might have prejudiced some or all of the defendants. The Court of Appeals in Ballard (9 Cir. 1945, 152 F.2d 941), on remand after previous reversal by the Supreme Court (322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148), had refused to find reversible error on the part of the trial court in proceeding to trial with a jury selected from a jury list made up

intentionally of males only. The Court dismissed the indictment on certiorari, 329 U.S. 187, 188, 67 S.Ct. 261, 91 L.Ed. 181, "in the exercise of [its] * * * power of supervision over the administration of justice in the federal courts * * * [because] the purposeful and systematic exclusion of women from the panel in [the] * * * case was a departure from the scheme of jury selection which Congress adopted, * * * [i. e.] that prospective jurors shall be selected by court officials without systematic and intentional exclusion of * * * [representatives of the] economic, social, religious, racial, political and geographical groups of the community" as the same Court had stated in Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 220, 66 S.Ct. 984, 90 L.Ed. 1181. Thiel was a private, civil tort action for damages by a railroad passenger against the carrier, removed from a state to the federal court on the ground of diversity of citizenship. Plaintiff passenger moved to set aside the verdict for the carrier and to strike out the entire jury panel upon the asserted ground that "mostly business executives or those having the employer's viewpoint are purposely selected on said panel, thus giving a majority representation to one class or occupation and discriminating against other occupations and classes, particularly the employees and those in the poorer classes who constitute, by far, the great majority of citizens eligible for jury service. * * * *" Evidence was taken on the motion which disclosed that five of the twelve jurors "belong more closely and intimately with the working man and employee class than they do with any other class" and might be expected to be "sympathetic with the experiences in life, the affairs of life and with the economic views, of people who belong to the working or employee class." The motion was denied. The Court of Appeals affirmed. 9 Cir., 149 F.2d 783. The Supreme Court granted certiorari "limited to the question whether petitioner's motion to strike the jury panel was properly denied." 326 U.S. 716, 66 S.Ct. 472, 90 L.Ed. 423. The

evidence on the motion disclosed that the court clerk and jury commissioner "deliberately and intentionally excluded from the jury lists all persons who work for a daily wage." The Supreme Court's majority opinion reversed the judgment; stating, 328 U.S. p. 224, 66 S.Ct. p. 997; "Thus a blanket exclusion of all daily wage earners, however well-intentioned and however justified by prior actions of trial judges, must be counted among those tendencies which undermine and weaken the institution of jury trial." The Court found that "[t]he evil lies in the admitted wholesale exclusion of a large class of wage earners in disregard of the high standards of jury selection."

The Court in Ballard, supra, points out that in California women were eligible for jury service under local law; that the federal statute then in effect contemplated that federal juries should be representative of both sexes; and adds that "[i]f women are excluded, only half of the available population is drawn upon for jury service." The opinion continues, 329 U.S. p. 193, 67 S.Ct. p. 264, with the statement that "The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded. The exclusion of one may indeed make the jury less representative of the community than would be true if an economic or racial group were excluded."

I distinguish Ballard and Thiel from the case at bar because they involved juries from which specific classes of citizens were *excluded*, although eligible to serve.

The most recent decision which this Court's research has disclosed which deals with the propriety of the selection of a grand or petit federal jury is that of King v. United States, 1 Cir. May 28, 1965, 346 F.2d 123. In that case the question presented was whether the fed-

eral grand and petit juries properly represented a cross-section of the community. Jurors were drawn by the federal jury commissioners from 29 municipalities, including Boston, in the District of Massachusetts. As to Boston only, however, the list from which the commissioners selected had been compiled by the Boston election commissioners, who had omitted persons between the ages of 21 and 25 and those over the age of 70, whom the federal statute, 28 U.S.C. § 1861, would have included. The Court, in affirming the conviction below had the following to say respecting the omissions complained of: "We regard it as highly speculative whether the decisional outlook of such excluded persons would be different from that of persons a mere few years older, or a few years younger. The mere fact that there might be a fewer young persons on the jury, and fewer of the oldest, than the exact proportion of such persons existing in the community does not of itself make a jury nonrepresentative." This quoted language, appropriately paraphrased, may be applied to the case at bar.

In their Reply Brief in support of this motion defendants argue that "the test for determining" the propriety of the practice utilized in impaneling a grand jury is whether "sex was consciously taken into account as a basis for selection", and "[s]ince sex was here taken into account, resulting in a purposeful limitation on the number of women placed in the initial panel, the grand jury was improperly impaneled and thus the indictment must be dismissed." The stipulated facts disclose no discrimination on account of sex. The privilege and burden of grand jury service rests equally upon all citizens irrespective of sex. The inclusion in the pool of names of more citizens of one sex than of the opposite cannot amount to discrimination against either sex. The practice complained of in this case was intentionally adopted in recognition of the practical difficulty in securing enough jurors while according to all summoned jurors the privilege of being excused from

service where special circumstances (such as the exigencies of employment requirements, health, family and household responsibilities) warrant. In affirming the conviction of a woman for the crime of second degree murder of her husband, by an all-male jury selected in accordance with a law of the State of Florida which exempted a female person from the duty of jury service unless she has registered her desire to be placed on the jury list, the Supreme Court of the United States held that the jury was constitutionally selected and such selection did not violate the defendant's right to an impartially selected jury. Hoyt v. State of Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118. The opinion of the Court states (p. 59, 82 S. Ct. 159) that the right to an impartially selected jury assured by the Fourteenth Amendment to the United States Constitution does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition of the defendant, or to the nature of the charges to be tried. The right requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammeled by any arbitrary and systematic exclusions. Citing Fay v. People of State of New York, 322 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043, and cases therein cited.

The Court, in Hoyt, pointed out that the Florida statute accorded to women the *privilege* of serving, but did not impose upon them the *duty* of service. As in Fay v. People of State of New York, supra, women were accorded by the statute an absolute exemption from jury service unless they expressly waived that privilege. At 368 U.S. p. 61, 82 S.Ct. p. 162, in Hoyt, the Court says: "Where, as here, an exemption of a class in the community is asserted to be in substance an exclusionary device, the relevant inquiry is whether the exemption itself is based on some reasonable classification and whether the manner in which it is exercisable rests on some rational foundation." It is further pointed out that in

Florida the statute has differentiated between men and women in two respects in the selection of jurors. To women it has accorded an absolute exemption from jury duty, based solely on their sex, but has given no similar exemption to men for a similar reason. The Act is described by the Court as having "provided for its effectuation in a manner less onerous than that governing exemptions exercisable by men: women are not to be put on the jury list unless they have voluntarily registered for such service; men, on the other hand, even if entitled to an exemption, are to be included on the list unless they have filed a written claim of exemption as provided by law." The Court concluded that the Florida statute was based on a "reasonable classification" and was therefore not infected with unconstitutionality. The opinion stated (p. 65, 82 S.Ct. p. 164) that "[g]iven the reasonableness of the classification involved in [the statute] * * *, the relative paucity of women jurors does not carry the constitutional consequence appellant would have it bear. 'Circumstances or chance may well dictate that no persons in a certain class will serve on a particular jury or during some particular period.'" Citing Hernandez v. State of Texas, 347 U.S. 475, at 482, 74 S.Ct. 667, 98 L.Ed. 866.

In Cassell v. State of Texas, 1950, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839, Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, and Collins v. Walker, 5 Cir. 1964, 329 F.2d 100 and 335 F.2d 417, cert. den. Hanchey v. Collins, 1964, 379 U.S. 901, 85 S.Ct. 189, 13 L.Ed.2d 175, there was clear racial discrimination based on color. Avery v. State of Georgia, 1953, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244, and Williams v. State of Georgia, 1955, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161, disapproved the use of name slips of different colors to indicate the race of prospective jurors as inviting discrimination in jury selection. In Glasser v. United States, 1942, 315 U. S. 60, 62 S.Ct. 457, 86 L.Ed. 680, there was clear discrimination within the female sex in the form of the limitation of

prospective female jurors to members of the League of Women Voters. There is an old saying that things equal to the same thing are equal to each other. In the District of New Jersey women, as citizens, enjoy the same rights and privileges and are required to perform the majority of the same duties as men. Since both sexes are equally entitled and obligated to perform jury service, they are fungible as far as being impartial for jury duty is concerned. All of the defendants in this case are corporations. Their stockholders include men as well as women. There has been no showing in the evidence upon which the present motion relies that an American woman is intellectually inferior or superior to an American man. There is not and cannot be shown that the indictment in this case resulted from the proportion existing between the sexes on the particular grand jury which returned it. Indeed, it is uncontroverted that the proportion of men and women in the pool of prospective jurors bears no fixed relationship to the proportion between the sexes on any particular jury of 23 which returns the indictment in any case.

In Chance v. United States, 5 Cir. 1963, 322 F.2d 201, cert. den. 1964, 379 U.S. 823, 85 S.Ct. 47, 13 L.Ed.2d 34 (also a Florida case) women volunteer registrants for jury service were accepted in the United States District Court for the Southern District of Florida. Their names were added to the list of male registered voters, and both sets of names were added to the box when it was replenished. This resulted in there being 394 women volunteers in one county and 1,952 women volunteers in another county. Four women were drawn on a panel of 50 names from which the grand jury was ultimately chosen, and three women actually served on the grand jury which returned the indictment. The Court of Appeals affirmed the District Court in denying a motion to dismiss the indictment upon the ground, *inter alia*, that a grand jury chosen from names obtained from a list of male registered voters, a list of women registered for jury service,

and a list of negro citizens recommended by Negro ministers and business leaders did not reflect systematic or intentional exclusion of any cognizable group. The opinion in Chance, supra, discussed and construed the opinions in Thiel, supra and in Ballard, supra. It pointed out that Thiel "lists six groups or classes which may not be excluded as jurors: economical, social, religious, racial, political, geographical." Chance adopts the view expressed in Gorin v. United States, 1 Cir. 1963, 313 F.2d 641, 644, in referring to a political group the Court in Thiel "meant the members of some defined political party or group." With respect to Ballard, supra, the opinion in Chance has this to say, 322 F.2d at p. 204: "Ballard v. United States held that in states in which women were not disqualified to sit on state juries, the systematic and intentional exclusion of women from federal juries was unlawful. The amendment of the federal statute in 1947 * * * in effect made Ballard controlling in all states, whether women were disqualified from state jury service or not. The effect, therefore, is to condemn the systematic and intentional *exclusion* (emphasis supplied) of women from federal juries. It is clear that women were not excluded as a matter of fact, much less by any system, from the grand jury here in question. The record indicates that three women served on the panel under attack. * * * At the most, the notion of a jury as a cross-section of the community is a conceptual one. A literal cross-section is neither required nor desired. * * *

"Nobody contends that to obtain a 'cross-section' it would be required that names be taken at random from the totality of the inhabitants of the area in order to comply with 28 U.S.C. § 1861. No particular pattern has been prescribed for use by the jury commission in determining the source of jury personnel, * * *. As Judge Learned Hand so cogently stated [in United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 224, affirmed, 1951, 341 U.S. 494 [71 S.Ct. 857, 95 L.Ed. 1137]]: '[Cross]-section] means a fair

sample; and a sample drawn at random from the whole community will of course represent the distribution of wealth in the community as a whole, as it would represent the distribution of age, height, predisposition to sclerosis, or any other characteristic; but nobody contends that the list must be a sample of the whole community.'" Proportional representation is not necessary, either as a constitutional requirement or to meet the statutory standards for federal courts. United States v. Flynn, 2 Cir. 1954, 216 F.2d 354; citing Hoyt v. State of Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118; Fay v. People of State of New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L. Ed. 2043; Akins v. State of Texas, 1945, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Dow v. Carnegie-Illinois Steel Corp., 3 Cir. 1955, 224 F.2d 414.

The authorities relied upon by movants do not support their contention that the indictment in the case at bar should be dismissed because the grand jury which voted it was improperly constituted and impaneled in that women were excluded therefrom. The evidence fails to disclose any basis for that contention. It was the systematic exclusion of women from the grand jury panel which Chance construed Ballard to have condemned—not a systematically arranged disproportion between the number of men and women in the pool from which the jury wheel was filled. The drawing for the grand jury in the case at bar was from a reservoir consisting of 246 men and 104 women. Of the 23 grand jurors selected four were women and 19 were men. Thus women were not excluded from the grand jury. I, as did the Court in Chance, must construe Ballard as according the usual meaning to the word "exclude" (derivatively, ex—out and claudo—I shut)—to shut out purposely or forcibly; keep out; debar. Movants have not discharged the burden of showing that women were excluded from the grand jury which returned the indictment in this case.

Defendants' reliance upon United States v. Hoffa, D.C.Fla.1961, 196 F. Supp. 25, which was distinguished in

Chance, supra, does not support their contention here. In the Hoffa case, the grand jury which returned the indictment under attack was drawn from a box containing approximately 1,350 names made up of 400 which had been selected prior to June 11, 1959 and 950 thereafter. All of the names in the box were of persons eligible for jury duty. In addition to questioning the qualifications of the jury commissioners, the defendant attacked the array because the commissioner and deputy clerk limited their selection of names for the jury box to those persons who were then registered to vote and, in the case of women, to those who had volunteered for jury service. Under the procedure criticized, the percentage of qualified citizens deliberately excluded from serving on the jury was extremely high. The District Judge, in dismissing the indictment in the Hoffa case, relied on Thiel, supra, and Ballard, supra, concluding, at p. 31 of 196 F.Supp., that "It is evident that a jury panel from which all were deliberately and systematically excluded who did not register to vote, in a community where many citizens qualified for federal jury service do not so register, and to likewise exclude all women from jury service except the very few who registered for jury service in the State courts, is not a fair representation of the community." (Emphasis supplied.) Such facts are not presented in the case at bar.

■ This Court takes judicial notice of the contents of its records and of the practice and procedure involved in presenting a case to a grand jury. Before any such presentation could be made the representatives of the Antitrust Division of the Department of Justice must necessarily have conducted a broad as well as a meticulous investigation of the practices charged against the defendants during the indictment period, and have taken great pains in the classification of the resulting evidence and its presentation to the grand jury. The resulting indictment should not be lightly dismissed unless the evidence discloses that the grand jury which returned the in-

dictment was not selected and constituted in conformity with the expressed congressional policy and constitutional mandate. Accordingly, defendant's motion number 1 to dismiss the indictment is denied.