UNITED STATES of America

v.

AMERICAN OIL COMPANY et al.,
Defendants.

Crim. A. No. 153–65.

United States District Court
D. New Jersey.

July 15, 1968.

David M. Satz, Jr., U. S. Atty., by Donald Horowitz, Asst. U. S. Atty., Bernard Wehrmann, James Daniels, David Leinsdorf, Attys., Dept. of Justice, for the Government.

Stickel & Stickel, by Robert W. McCann, Newark, N. J., for American Oil Co.; Kirkland, Ellis, Hodson, Chaffetz & Masters, by Hammond E. Chaffetz, Paul Uhlenhop, Chicago, Ill., Townley, Updike, Carter & Rodgers, by Ronald S. Daniels, New York City, of counsel for American Oil Co.

McCarter & English, Newark, N. J.; for Atlantic Richfield Co.; Hughes, Hubbard, Blair & Reed, by Jerome G. Shapiro, Harvey D. Myerson, New York City, of counsel for Atlantic Richfield Co.

Stryker, Tams & Dill, by William L. Dill, Jr., Newark, N. J., for Humble Oil and Refining Co.; Milbank, Tweed, Hadley & McCloy, by A. Donald MacKinnon, Henry F. Hartmann, New York City, of counsel for Humble Oil and Refining Co.

Carey & Jardine, by Robert Carey, Jr., Newark, N. J., for Gulf Oil Corp.; Kissam & Halpin, by Leo T. Kissam, Anthony S. Genovese, Frederick L. Scofield, Arthur L. Vangeli, New York City, Jesse P. Luton, Jr., Houston, Tex., of counsel.

Pitney, Hardin & Kipp, by Donald B. Kipp, Newark, N. J., for Sinclair Refining Co.; Wickes, Riddell, Bloomer, Jacobi & McGuire, by Harold F. McGuire, New York City, of counsel for Sinclair Refining Co.

Riker, Danzig, Scherer & Brown, by Dickinson R. Debevoise, Newark, N. J., for Socony Mobil Oil Co., Inc.; Dewey,

Ballantine, Bushby, Palmer & Wood, by Edward N. Sherry, New York City, of counsel for Socony Mobil Oil Co., Inc.

Milton, Keane & De Bona, by Thomas J. Brady, Jersey City, N. J., for Cities Service Oil Co. and for Cities Service Co.; Paul, Weiss, Rifkind, Wharton & Garrison, by Jay H. Topkis, George H. Colin, New York City, of counsel for Cities Service Oil Co. and for Cities Service Co.

## OPINION

WORTENDYKE, District Judge:

On October 20, 1966 this Court filed an Opinion requiring the Government to make certain disclosures in response to the defendants' demands for a Bill of Particulars. See United States v. American Oil Company, 259 F.Supp. 851 (D. N.J.1966). Subsequently, an Order was entered, dated November 13, 1967, which provided, *inter alia*, that the defendants would be permitted to bring any additional appropriate motions within a designated period. This decision deals with the motions filed pursuant to the permission granted in that Order.

## I. GRAND JURY

For the third time in this case, the defendants are seeking to overturn the Indictment returned against them because of alleged defects in the impanelling of the Grand Jury. The initial motion addressed to this point was denied on December 30, 1965. See United States v. American Oil Company, 249 F.Supp. 130 (D.N.J.1965). The subsequent motion for reconsideration of that decision was likewise denied. See United States v. American Oil Company, 253 F.Supp. 783 (D.N.J.1966). On this third application, the defendants rely upon much of the material presented on the previous motions. Therefore, repetition of the factual assertions and the legal contentions set out and disposed of on those occasions will be limited to a reiteration only of so much of that material which is essential to accurately place this most recent thrust of the defendants' argument in its proper context.

Defendants' initial attack upon the impanelling procedure was based upon the uncontroverted assertion that, by predetermination, of the 350 cards placed into the jury wheel, two-thirds contained the names of men while only one-third contained the names of women. Relying, *inter alia*, upon Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946), the defendants asserted that the 2 to 1 predetermined disproportion in favor of men resulted in an improper systematic discrimination against and exclusion of women from the Grand Jury, requiring a dismissal of the Indictment. Building upon that initial premise, the defendants now put forth additional facts, again uncontroverted by the Government, which indicate that the end result of the initial 2 to 1 disproportion in favor of men's names placed into the jury wheel is the creation of an even greater disproportion between the number of men and women serving on Grand Jury panels. Defendants' moving papers disclose that of the twenty-five Grand Jury panels selected between April 1, 1958 and November 1, 1967, an average of 49.6% of the men selected were excused from Grand Jury service, whereas an average of 62.5% of the women selected were excused from such service. The percentages vary from a high in April 1958, when 38% more women were excused than men, to April 1965, when 12% more men were excused than women. Of the twenty-five Grand Juries selected during that ten year span, a greater percentage of women were excused on twenty-one occasions while a greater percentage of men were excused on four occasions.

Thus, defendants assert, the initial seeds of disproportion having been sown, and the inevitable harvest of a more unequal ratio between the sexes having been reaped, the Indictment must fall because the impanelling procedure utilized resulted in a Grand Jury selection process which failed to ensure fair cross-sectional representation from the community.

This Court's initial disinclination to grant defendants' motion was based upon its finding that the defendants failed to show that the procedure utilized resulted in the exclusion of " * * * *an appropriate class* forming a portion of a fair cross-section of the community, * * *." United States v. American Oil Company, 249 F.Supp. 130 at 133.

The additional facts presented change neither the primary thrust of defendants' initial contentions nor this Court's rationale in denying defendants' prior motions. From the face of the moving papers, it is apparent that we are not dealing with the type of exclusionary tactic which has been uniformly proscribed by the courts. See Ballard v. United States, supra, and United States v. Roemig, 52 F.Supp. 857 (N.D.Iowa 1943). Nor does the method under attack even remotely approach the equally repugnant procedure of tokenism which has likewise been condemned. See Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) and Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945). Compare Fay v. People of State of New York, 332 U.S. 261, 266 note #4, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947).

■ The real import of the allegedly newly discovered evidence presented on behalf of the defendants is its apparent conflict with the validity of the initial premise upon which the Clerk of this Court presumably relied in instituting the disproportion between men and women. However, as I indicated upon the reconsideration of the prior motion, " * * * the Court's denial of the motion did not turn upon the contents of the Clerk's letter, * * *" which evidenced an intent to achieve a more equal ratio between men and women on the panels ultimately selected. United States v. American Oil Company, 253 F.Supp. 783 at 784. Therefore, the additional evidence, which indicates that the procedure adopted apparently compounded an imperfection which it sought to remedy, does not persuade this Court that the procedure was so deficient as to require a dismissal of the Indictment.

■ There has been no showing of any exclusionary procedure directed at a cognizable class forming a component of a fair cross-section of the community. Both men and women are represented in substantial numbers on all jury lists, even if disproportionately. The courts have never held that a defendant is entitled to proportionate representation of cognizable groups on the list from which jury panels are selected. In fact, just the opposite is true. See Swain v. State of Alabama, supra at 380 U.S. 208, 85 S.Ct. 824 and Dow v. Carnegie-Illinois Steel Corporation, 224 F.2d 414 (3 Cir. 1955). In the final analysis " * * * it is doubtful whether any system could be devised to accomplish this purpose." United States v. Hoffa, 349 F.2d 20, 31 (6 Cir. 1965).

This Court is not unmindful that the controlling statutory sections involved in this motion, 28 U.S.C. § 1861 et seq., have recently been amended by the "Jury Selection And Service Act of 1968," 82 Stat. 53 et seq., 28 U.S.C. § 1861 et seq. The amendments to the jury selection statute evidence a continuing endeavor on the part of Congress to achieve a more perfect system of jury selection toward the end that the composition of juries may reflect a fair cross-section of the community. However, as Judge Kaufman, aware of the impending abandonment of the "key man" system because of the above-mentioned amendments, said, in upholding the validity of that system:

"We have found no case, pertaining to state juries and decided solely on a constitutional issue basis, or pertaining to federal juries and decided in the light of the federal court system's more exacting supervisory responsibilities, in which a federal court, from the vantage point of twenty-twenty hindsight, has decided that a jury selection system has been negligently and therefore unlawfully administered because such administration, while achieving substantial representation within all

of the identifiable community groups discussed in the 1959 Conference Report, has also produced partial deviation from complete statistical balance within a few of those group categories. This Court will seek, as it has in the past, to achieve within its jury system, full representation of the community with regard to all such groups. In so doing, efforts directed toward improvements will be made. The recognition that such efforts are apposite in no way requires the conclusion that intentional or negligent discrimination occurred, or that substantial lack of representation of any identifiable group existed, in connection with the juries under attack in these cases." United States v. Cohen, 275 F.Supp. 724, 743 (D.Md.1967).

I am of the opinion that the recently adduced evidence outlined above does not require a reversal of my prior rulings on this motion. Therefore, this most recent motion to dismiss the Indictment because of alleged defects in the impanelling of the Grand Jury is denied.

## II. ATLANTIC RICHFIELD'S MOTION TO DISMISS UNDER RULE 12(b)

The sufficiency of the Indictment in this case under the criteria of F.R.Cr.P. 7(c) was upheld in this Court's Opinion of January 26, 1966, 249 F.Supp. 799 (D.N.J.1966). That determination was made without reference to any Bills of Particulars, the demand for which had not yet been made. There is presently before the Court a further motion by defendant, Atlantic Refining Company (now Atlantic Richfield) to dismiss the Indictment under Rule 12(b) of the Federal Rules of Criminal Procedure. Movant contends that, when the allegations of the Indictment are viewed in the "illumination" of the Bills of Particulars which have been obtained from the Government, none of the three Counts of the Indictment charges an offense on its part.

## COUNT I

Atlantic's argument on this Count may be succinctly stated as follows:

(1) Count 1 alleges a conspiracy to raise, fix, stabilize and maintain tank wagon prices and retail prices in the relevant trading area.

(2) The Bills of Particulars in specifying acts done in furtherance of the alleged conspiracy speak exclusively in terms of "dealer tank wagon prices."

(3) "Dealer tank wagon prices" are defined as tank wagon prices minus discounts and allowances normally given by producers to retailers to enable them to meet the retail prices of competitors. Therefore, "dealer tank wagon prices" are determined by the variable factors of the market place.

(4) Equalization of "dealer tank wagon prices" and tank wagon prices is a prerequisite to the conspiracy charged.

(5) Control over retail prices of competing non-conspirators is necessary to eliminate the inherent fluctuation in "dealer tank wagon prices."

(6) Control over retail prices of competitive non-conspirators is not alleged.

Therefore, there being no allegation of control over the retail prices of competitive non-conspirators, "dealer tank wagon prices" necessarily fluctuate, "dealer tank wagon prices" and tank wagon prices cannot be equalized and no conspiracy can exist.

■ Movant's contention is, in effect, a demurrer to the Indictment. Rule 12 of the Federal Rules of Criminal Procedure has expressly abolished demurrers. In their stead, subdivision (1) of subsection (b) of that Rule provides:

"(1) * * *. Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion."

Since the present motion is the current equivalent of a demurrer, the allegations of the Indictment must be accepted as written. United States v. Lattimore, 94 U.S.App.D.C. 268, 215 F.2d 847, 851 (1954), and movant cannot find support in what facts it may believe that the trial will disclose, Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732 (9 Cir.) cert. den. 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954). See also United States v. Jones, 207 F.2d 785 (5 Cir. 1953); United States v. Sanders, 196 F.2d 895 (10 Cir.) cert. den. 344 U.S. 829, 73 S.Ct. 33, 97 L.Ed. 645 (1952).

Both parties to this motion cite and discuss United States v. Boston & Maine Railroad, 380 U.S. 157, 85 S.Ct. 868, 13 L.Ed.2d 728 (1965) as precedent for considering or for not considering an "indictment as illuminated by the bill of particulars" in testing the sufficiency of that Indictment. The Court in that case specifically refrained from ruling on the appropriateness of such a procedure when it said:

"This case was decided below and argued here on the assumption that, although the indictment itself was sufficient against a motion to dismiss, it became insufficient for that purpose by reason of the bill of particulars. We have held, however, that 'the bill of particulars * * * forms no part of the record *for the purposes of the demurrer.'* United States v. Comyns, 248 U.S. 349, 353, 39 S.Ct. 98, 63 L.Ed. 287 (emphasis supplied); Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799. Since the parties have made no attempt to invoke this rule at any stage in this proceeding, we are not required to express any view as to whether this rule for demurrers is applicable on motions to dismiss under Rule 12, Fed.Rules Crim. Proc." United States v. Boston & Maine Railroad, supra, at 159 note 1. 85 S.Ct. at 869.

■■ As a general rule, of course, a bill of particulars can neither add to nor subtract from an indictment. United States v. Critchley, 353 F.2d 358, 362 (3 Cir. 1965); United States v. North American Van Lines, Inc., 202 F.Supp. 639, 641 (D.D.C.1962). It is true, however, that certain courts have apparently resorted to a consideration of the bill of particulars in analyzing the sufficiency of an indictment. See United States v. Cooney, 217 F.Supp. 417, 422 (D.Colo. 1963); United States v. National Dairy Products Corporation, 196 F.Supp. 155, 157 (W.D.Mo.1961) rev'd sub nom. United States v. Wise, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962). However, those situations are inapposite to the case at bar. It may also be said that the plain language of Rule 12(b) of the Federal Rules of Criminal Procedure does not preclude such a reference. It is, nevertheless, abundantly clear both from the plain language of the Rule and from case law that, regardless of the appropriateness of such reference upon a demurrer, this Court is precluded from usurping the role of the jury as the finder of fact. United States v. Lewis Food Company, Inc., 366 F.2d 710 (9 Cir. 1966) rev'g 236 F.Supp. 849 (S.D.Cal.1964).

■ Atlantic, by a process of logical analysis, asserts that the charge brought by the Government in Count 1 is fatally deficient because of an internal logical inconsistency when the charge is considered as illuminated by the Bills of Particulars. However, Atlantic presents only one possible analysis of the charge in light of the specifics disclosed. Once this Court exercises its power in choosing between alternatives, even in choosing the most probable, it oversteps its bounds and intrudes upon the realm of the jury. As to the validity of Atlantic's analysis, this Court, of course, expresses no opinion.

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, proscribes contracts, combinations and conspiracies in restraint of trade. The protection of price competition from conspiratorial restraint is an object of special solicitude under the antitrust laws, United States v. General Motors Corp., 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966) and price-

fixing combinations are illegal per se. Sun Oil Company v. Federal Trade Commission, 350 F.2d 624 (7 Cir. 1965) cert. den. 382 U.S. 982, 86 S.Ct. 559, 15 L.Ed. 2d 473 (1966). In this Court's Opinion of January 26, 1966, 249 F.Supp. 799 at 802, it was pointed out that "the first count [of the Indictment] specifically charges that the defendant corporations, * * * engaged in a combination and conspiracy which unreasonably restrained interstate trade * * * in gasoline * * * in violation of Section 1 of the Sherman Act," and that the combination and conspiracy complained of "consisted of a continuing agreement, * * 'to raise, fix, stabilize and maintain tank wagon prices and retail prices of gasoline in the trading area.'" In furtherance of the object of the conspiracy the Indictment charges the defendants with " * * * (1) raising, fixing, stabilizing and maintaining tank wagon prices and retail prices of gasoline in the trading area, and (2) substantially restricting the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area." The alleged consequences of the foregoing charged acts are specifically enumerated in paragraph 16 of the Indictment. Nothing contained in the Bills of Particulars changes or modifies the language of the Indictment, which still suffices to set forth an offense under the statute.

### COUNTS II and III

Atlantic's present motion also charges failure of Counts II and III to charge offenses. Both of these Counts have been analyzed and held sufficient in this Court's decision of January 26, 1966. Movant's present attack on Count II rests upon the contention that there is "no allegation in the indictment or the bills of particulars [which] charges any control over, or restraint of, production of gasoline, or shipment of gasoline into the trading area, by any defendant or by any alleged co-conspirator." Movant concedes that "defendants and alleged co-conspirators had the power, acting in concert, to set the prices charged by them for gasoline sold by them." Because "the relevant market is alleged to be *all* gasoline sold in the trading area, and the alleged conspirators are *not* alleged to have the power to exclude gasoline produced by non-conspiring companies" the defendants, says movant, must be presumed to be without power to prevent competition. The substance of this contention was disposed of in my previous opinion in the following language:

> "The totality of the allegations of the indictment clearly discloses a combination of power with a purpose or intent to monopolize. These elements are the essentials of the offenses charged in the Second and Third Counts of the indictment under consideration." United States v. American Oil Company, 249 F.Supp. 799, 809 (D.N.J. 1966).

I decline to reconsider on this motion the contentions which evoked the foregoing Opinion. Consequently, the motion of Atlantic Richfield to dismiss the Indictment in this case is denied.

### III. MOTION TO STRIKE PORTIONS OF BILLS OF PARTICULARS

By motion dated January 8, 1968 certain of the defendants named in the Indictment, viz: The American Oil Company (hereinafter American), Humble Oil & Refining Company (hereinafter Humble), Sinclair Refining Company (hereinafter Sinclair) and Socony Mobil Oil Company, Inc. (hereinafter Mobil) seek an Order striking certain portions of the Bills of Particulars relating to the First Count of the Indictment.

Movants contend that the claims of the Bills of Particulars to which their motion is directed are contrary to the allegations of the Indictment and amount to a change and enlargement of the offense charged in Count I of the Indictment to the prejudice of movants.

Count I charges a price fixing conspiracy in restraint of trade in violation of Section 1 of the Sherman Act. The four moving defendants are charged only in Count I which alleges that they, to-

gether with the other named defendants, since at least as early as 1955, have been engaged in a combination and conspiracy in unreasonable restraint of interstate trade and commerce in gasoline in the States of New Jersey, Pennsylvania and Delaware in violation of Section 1 of the Sherman Act. This combination and conspiracy is alleged to have consisted of a continuing agreement, " * * *, the substantial term of which has been to raise, fix, stabilize and maintain tank wagon prices and retail prices of gasoline, * * * " in the three States named. In particularizing the "things" done in furtherance of the conspiracy charged, the First Count alleges that they consisted of (a) raising, fixing, stabilizing and maintaining tank wagon prices and retail prices of gasoline and (b) substantially restricting the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the three-state area. The First Count does not expressly charge that the object of the conspiracy of the defendants named therein was to restrict the supply of private brand gasoline. Such a charge is explicitly made only in Counts II and III of the Indictment, which are directed only against the Atlantic Richfield Company (Atlantic), Cities Service Oil Company (Cities), Cities Service Company (Cities Service) and Gulf Oil Corporation (Gulf).

Movants contend that the Indictment does not charge them with having participated in any conspiracy involving an agreement to restrict supply either as defendants in Count I, or as co-conspirators in Count II, or in the joint attempt to monopolize through restriction of supply as charged in Count III. Movants argue, in attempting to distinguish Count I from Counts II and III, that they are charged with a Sherman Act violation in Count I but that they are not so charged in Counts II and III because Count I does not involve any alleged agreement to restrict supply or the carrying out thereof in which movants are participants.

In their motion for Bills of Particulars defendants requested the Govern-

ment to state as to each category of prices alleged to have been fixed, and as to each price of each corporation alleged to have been fixed, " * * * what action, in fact, each defendant and co-conspirator agreed to take, i. e., the means and methods agreed to, by which each such category and price was to be * * * fixed, * * *." Subdivision C of the Government's response to the foregoing inquiry reads as follows:

"C. Atlantic, Gulf, Cities and Cities Service agreed with each other to substantially restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline."

The presently moving defendants contend that:

"By charging the method C agreement to restrict supply ·in the particulars relating to Count I, the Government has completely disregarded the one thing which the indictment, when read as a whole, most clearly manifests, viz: that the Grand Jury deliberately refrained from charging agreement to restrict supply in Count I."

Movants point out that, in addition to the four co-conspirators named in the Indictment, the Bills of Particulars name six distributors as co-conspirators in Count I. The Particulars relating to Count II state that the conspiracy alleged therein contained two objects; namely, (1) to fix tank wagon and retail prices, and (2) to substantially restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline. Thus, say the movants, the Government makes claims in its Bills of Particulars contrary to what the Grand Jury charged in the Indictment, i. e., that the conspiracies alleged in Count I and II and the parties thereto were identical.

Under date of April 19, 1968, in what the Government characterizes as "Amendment To Bills Of Particulars", it is stated as follows:

"Nothing in the Bill of Particulars, Further Bill of Particulars, or Supple-

ment to Further Bill of Particulars filed to date shall be construed as constituting a claim:

(1) that American Oil Company, Humble Oil & Refining Company, Sinclair Refining Company, and Socony Mobil Oil Company, or any of them, agreed with anyone to restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area; or

(2) that American Oil Company, Humble Oil & Refining Company, Sinclair Refining Company, and Socony Mobil Oil Company, or any of them, agreed with anyone that anyone shall agree to restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area."

This "Amendment" purports to relate to a statement made during the oral argument on April 17, 1968 of the motions referred to herein. The plain language of this "Amendment" appears to deny that any of the four moving defendants agreed to restrict or agreed that any others should agree to restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area.

█ Movants' comments upon the content and effect of the foregoing "Amendment" have been embodied in a letter dated April 26, 1968 from counsel for movants to the Court to the effect that the "Amendment" fails to refer to " * * other 'admissions', made in the Government's briefs and/or in oral argument, * * *." Those other admissions are asserted to be: a Government disclaimer that movants knew of the claimed method C agreement to restrict supply, a similar disclaimer that movants participated in the acts from which the agreement is to be inferred and, finally, the Government's contention that the agreement to restrict supply was merely one of the "things" done in furtherance of rather than a "term" or "means" of the Count

I conspiracy. Movants therefore contend that even if the "Amendment" be construed to include the foregoing disclaimers, the instant motion should prevail for the following reasons:

"1. The amendment does not eliminate or in any way qualify the claim made in paragraph 'C' of Item C–6 of the Bills of Particulars that:

'C. Atlantic, Gulf, Cities and Cities Service agreed with each other to substantially restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline.'

2. The Bills thus still seek unlawfully to change and enlarge Count I of the Indictment by injecting therein a claim of agreement to restrict supply not made in that Count. * * *

Paragraph 14 of the Indictment charges that the continuing agreement constituting the conspiracy alleged in Count I was to fix tank wagon and retail prices of gasoline in the trading area, and Paragraph 15 alleges that " * * * the defendants and co-conspirators did various things * * *," including the restriction of the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area. Paragraph C of Item C–6 of the Bills of Particulars alleges that Atlantic, Gulf, Cities and Cities Service agreed with each other to substantially restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline. In my opinion, the effect of the "Amendment To Bills of Particulars", dated April 19, 1968, is not to refute the charge in Paragraph C Item C–6 aforesaid but is entirely consistent therewith. Count I of the Indictment charges all the defendants with a conspiracy, in unreasonable restraint of interstate trade in gasoline in violation of Section 1 of the Sherman Act, to fix tank wagon and retail prices of gasoline in the trading area. In furtherance of this conspiracy, defendants did "substantially restrict the amount of gasoline available to distributors and dealers engaged in the sale of private

brand gasoline in the trading area." An *effect* of the conspiracy was to restrain and suppress "competition from distributors and dealers engaged in the sale of private brand gasoline in the trading area." The "Amendment" of April 19, 1968 merely exonerates American Oil, Humble Oil, Sinclair Refining and Socony Mobil Oil of agreeing with anyone to restrict the amount of gasoline available to distributors and dealers engaged in the sale of private brand gasoline in the trading area. Construing the language of Paragraph C of Item C–6 of the Bills of Particulars in conjunction with the "Amendment" of April 19, 1968, it is the Opinion of this Court that the Bills of Particulars in no way enlarge upon the charge in Count I as returned by the Grand Jury. Therefore, the motion is denied.

## IV. DISCOVERY AND INSPECTION

This portion of the Court's Opinion relates to a pending motion by all of the defendants for certain discovery and inspection pursuant to Rules 6(e) and 16 of the Federal Rules of Criminal Procedure. All of the moving defendants, excepting American, request of this Court an Order pursuant to Rules 6(e) and 16(a) (3) permitting inspection of and copying of the recorded testimony of each officer and employee of each of the corporate defendants who testified before the Grand Jury which returned the Indictment herein. American seeks, pursuant to the above-mentioned Rules, only the testimony of those employees of American who are going to testify at trial. In addition to the Grand Jury testimony of officers and employees, all of the defendants have moved for an Order permitting them to inspect and copy:

"(a) certain documents which are identified in the bill of particulars but which are unavailable to, or cannot be identified by, any of the defendants;

(b) the grand jury testimony and statements of the witnesses whom the government intends to call at trial;

(c) statements of persons who have relevant knowledge and whom the Government does not intend to call as witnesses;

(d) the grand jury testimony and statements of representatives of unindicted alleged co-conspirators and of the alleged 'victims' of the alleged conspiracy; and

(e) evidence and information in the Government's possession which is favorable to any of the defendants and to which defendants are entitled under Brady v. [State of] Maryland, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963)."

Defendants construe F.R.Cr.P. 16(a) (3) or, in the alternative F.R.Cr.P. 6(e), as entitling each defendant to inspect and copy the Grand Jury testimony of its officers and employees. The Government takes the position that the testimony of officers and employees of a corporation before a Grand Jury is not the testimony of the corporation and, therefore, is not discoverable under Rule 16 (a) (3). The Government further argues that discovery under Rule 6(e) is limited to discovery at the time of trial and that, in any event, at this juncture, the defendants have failed to demonstrate a particularized need for disclosure under Rule 6(e).

A meaningful disposition of defendants' broad demands for discovery and inspection cannot be made without reference to the concrete facts which form the background of this litigation. In Count I of this Indictment, the Government alleges a ten year conspiracy among the parties to fix tank wagon prices and retail prices of gasoline in the states of New Jersey, Pennsylvania and Delaware. Counts II and III allege a conspiracy to monopolize and an attempt to monopolize trade in gasoline in the same market area over an identical time span. The initial Bills of Particulars indicate the agreements upon which the alleged conspiracies rest are alleged to be implicit in the activities related therein. The Grand Jury in this matter originated its

investigation in 1963 and returned the instant Indictment in April, 1965. During the course of that investigation it heard the testimony of some 52 officers and employees of the various defendants.

Rule 16(a) (3) provides that:

"Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant * * * (3) recorded testimony of the defendant before a grand jury."

Rule 6(e), in pertinent part, declares as follows:

" * * * [A] juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

Both of these Rules were amended on February 28, 1966 effective July 1, 1966 and this Court can find nothing to indicate any inconsistencies in construing them together in the face of a motion for disclosure of Grand Jury testimony. That is not to say that the criteria for disclosure under both Rules is identical for those criteria may well depend upon the relationship between the party seeking disclosure and the person whose testimony is sought to be obtained. The extent of this relationship or identity has evoked much discussion in recent court decisions. To certain differing degrees, every court faced with the problem presented at bar has found that the relationship between the corporate defendant and its officers and/or employees was so close as to require disclosure of Grand Jury testimony. See United States v. Aeroquip Corporation, 41 F.R.D. 441 (E.D. Mich.1966); United States v. United Concrete Pipe Corporation, 41 F.R.D. 538 (N.D.Tex.1966); United States v.

Venn, 41 F.R.D. 540 (S.D.Fla.1966). The Government petitioned for writs of mandamus in the latter two cases to test the correctness of the Orders entered in light of its proposition that Rule 16(a) (3) does not contemplate a release of an individual's testimony to his employer. United States v. Hughes, 388 F.2d 236 (5 Cir. 1968). In the *Concrete Pipe* case, supra, Judge Hughes granted discovery as to executive corporate officers as a matter of right. The Court of Appeals set the decision down for further briefs and arguments, but in doing so indicated that one of the issues relevant to the appropriateness of mandamus was the lack of any indication in the court below of the availability of discovery on discretionary grounds. The Fifth Circuit found mandamus inappropriate as to the *Venn* case, supra, wherein Judge Cabot rested his order for disclosure of the testimony of officers and employees on a combination of his inherent power to assure a fair trial, Rule 6(e) authorizing production of Grand Jury minutes preliminarily to a trial, Rule 16(a) (3) permitting disclosure of a defendant's Grand Jury testimony, and the case of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). The Court of Appeals, feeling that no abuse of discretion had been shown, denied the application for the writ.

 It is clear from the cases that a request for disclosure of Grand Jury testimony, either under Rule 6(e) or Rule 16(a) (3), is an appeal to the discretionary powers of the Court. That being the case, this Court can see no reason for becoming entangled in a semantic argument in attempting to determine whether, for purposes of Rule 16(a) (3), there is a conceptual identity between a corporation and its officers and employees. Since the recent amendments to the Rules of Criminal Procedure, there has been a marked increase, as was intended, in the scope of discovery allowed in criminal practice in the federal system. See Notes of Advisory Committee on Rules. Rule 16, 18 U.S.C. There are those, and this Court counts itself among them, who feel

that in the long run, expanded discovery will promote rather than hinder the ends of criminal justice. The Rules pertaining to discovery and disclosure usually leave sufficient latitude in the exercise of discretion to prevent or correct abuses. There remain, no doubt, instances where the ends of justice require that the secrecy of Grand Jury testimony remain inviolate. See United States v. Rose, 215 F.2d 617, 628 (3 Cir. 1954). No such showing has been made in this case.

■ There is currently going on within the federal system a discussion as to whether the recent liberalization of discovery in criminal cases has merely lessened the burden of a defendant in moving a Court to exercise its discretion in granting discovery or whether the burden has shifted to the other foot, so to speak, so as to require a showing by the Government that the requested disclosure is somehow prejudicial to the prosecution. Compare United States v. Louis Carreau, Inc., 42 F.R.D. 408 (S.D.N.Y.1967) with United States v. Projansky, 44 F.R.D. 550 (S.D.N.Y.1968). This Court is of a view that the outcome of any particular discovery motion is dependent upon a balancing of the competing interests advanced, having in mind the ultimate objectives of justice and a fair trial.

■ Therefore, in view of the language of Rules 6(e) and 16(a) (3) and the cases construing them, the complexity of this litigation as outlined above, the fact that the Government will seek to prove that the alleged conspiracy agreement is to be inferred from the activities of the officers and employees of the various corporate defendants, the close proximity of relationship between the parties seeking discovery and the persons whose testimony is sought to be discovered, and the lack of countervailing interests, this Court is of the opinion that the defendants are entitled to the Grand Jury testimony of those persons who, when they testified before the Grand Jury, were officers or employees of any of the moving corporations.

All of the defendants have moved pursuant to Rule 16(b) for inspection of certain documentary material as indicated in paragraph "(a)" above. Apparently this inspection has been consented to by the Government and the demand is now moot.

Paragraph "(b)" above calls for the Grand Jury testimony and statements of witnesses to be called at trial by the Government. Paragraph "(c)" demands disclosure of statements given by persons whom the Government does not intend to call as witnesses and paragraph "(d)" the testimony and statements of unindicted alleged co-conspirators and alleged "victims" of the alleged conspiracy.

■ Since this is neither a case of treason nor a capital offense under 18 U.S.C. § 3432, the Government is not required to state who its witnesses will be. That being so, it is impossible, short of a wholesale disclosure of the Government's evidence, for this Court to determine who fits into what category. As to the respective categories, of course, differing considerations may ultimately require different dispositions. Statements of Government witnesses given to Government agents are only discoverable within the terms outlined in the Jencks Act, 18 U.S.C. § 3500. See Palermo v. United States, 360 U.S. 343, 351, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Therefore, since those statements cannot now be judged within the definitions set out by that Act, disclosure must await a more appropriate hour. A fortiori, statements of non-witnesses, whose identity need not be disclosed, need not be turned over. Grand Jury testimony of witnesses does not fall within the scope of the Jencks Act. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 398, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). Therefore, a disclosure of that testimony is denied until such time upon trial as the Court is in a position to ascertain the identity of the persons involved and the degree of "need" required to be shown for disclosure. Dennis v. United States, supra.

■ That aspect of this discovery motion indicated by paragraph "(e)" above, seeking disclosure of all exculpatory material under the ruling in Brady

v. State of Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), is without support in the authorities apparently relied upon. *Brady, supra,* does not create pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure. The recent amendments to those Rules were made with full appreciation of the teaching of that case. *Brady, supra,* merely delineates the boundaries of the duty imposed upon the Government to voluntarily turn over exculpatory material and provides a method of enforcing that duty at trial or after a conviction. United States v. Cobb, 271 F. Supp. 159, 163 (S.D.N.Y.1967); United States v. Armantrout, 278 F.Supp. 517, 518 (S.D.N.Y.1968).

Therefore, except as provided hereinabove regarding the Grand Jury testimony of officers and employees of the corporate defendants, the motion for discovery and inspection is denied.

Let an Order in conformity with the foregoing Opinion be presented.